WARREN, Justice.
 

 This is an appeal from that part of a divorce judgment which divided the marital estate.
 

 Appellee has filed a motion to dismiss the appeal claiming that appellant has voluntarily accepted benefits under the judgment and therefore may not attack it. A review of the record shows that the acceptance of at least some of the benefits were out of practical necessity rather than a voluntary acceptance. Also it appears that there would be little problem in restoring the status quo without prejudice to appellee, therefore appellant is not estopped from pursuing this appeal.
 

 Appellant and appellee were married in 1966. At that time, appellee worked as an employee in a restaurant owned and operated by his father as a sole proprietorship. In January, 1969, the assets of the restaurant were transferred to appellee from his father. The restaurant continued to be operated as a sole proprietorship by appellee until August 1969, when it was incorporated as Tony’s Restaurant, Inc. Since that time, the restaurant has prospered and has become one of the more fashionable restaurants in the Houston area. The records show that the corporation was capitalized by the exchange of $19,663.00 in assets belonging to appellee and/or appellant. There is some evidence that $9365.00 of the assets exchange for stock of the corporation consisted of the assets transferred to appel-lee by his father in January, 1969. The restaurant constituted by far the largest asset of the community, and its worth and division is the main source of contention between the parties.
 

 The court awarded the stock of the restaurant to appellee subject to a lien in favor of appellant to secure the payment of a
 
 *822
 
 $300,000.00 promissory note payable to appellant in six equal annual installments of $50,000.00 each.
 

 Appellant contends that the trial court: (1) erred in finding that the transfer of assets to appellee by his father was a gift; (2) erred in finding that 47% of the stock in the restaurant was the separate property of appellee; (3) abused its discretion in awarding virtually all of the income producing property to appellee; (4) abused its discretion in dividing the estate, and (5) erred in its finding that Tony’s Restaurant, Inc., was not the alter ego of appellee.
 

 Appellant’s first and second points of error urge that the finding by the trial court that the transfer of assets in January 1969, to appellee from his father was a gift is not supported by sufficient evidence and, alternatively, that such finding is against the greater weight and preponderance of the evidence.
 

 Both appellee and his father testified that the transfer was a gift. The certified public accountant who set up the books for the business testified that the transfer was a gift and the attorney who drew the documents to effect the transfer testified that, to the best of his knowledge, no consideration was paid for the assets. Appellant testified that appellee told her he was buying the assets. Appellant’s main contention regarding this point is that ap-pellee’s individual Federal Income Tax Return for the year 1969 shows that an investment credit was taken on these assets and that because such a credit is not allowable on property received by gift, as a matter of law, the transfer should be considered as a-sale. We disagree. Although the fact that such a credit was taken is some evidence that there was a sale rather than a gift, such evidence would not constitute a judicial admission that the transfer was a sale. All the above testimony was available to the court to be given such weight as he considered appropriate. We cannot say that his finding was against the great weight and preponderance of the evidence.
 

 The next two points of error claim that the finding by the court that 47% of the stock in Tony’s Restaurant, Inc., was the separate property of appellee is unsupported by sufficient evidence and, alternatively that such finding is against the great weight and preponderance of the evidence.
 

 The evidence, although scant, is undisputed that the same furniture, equipment and leasehold improvements which were transferred to appellee by his father in January, 1969, were later transferred by appellee to the corporation in August, 1969, in exchange for stock. If these assets were originally acquired by appellee as a gift, as found by the court, then appellee would be entitled to claim as his separate property, the stock received in exchange for the assets.
 

 Appellant contends that not only should appellee be required to prove that the original transfer was a gift but he should also be required to prove the specific property which was the subject of the gift, its value, the specific property exchanged for stock, and the exact ratio that the specifically proved property bore to the total value of the stock. In other words, she alleges that appellee must trace the assets that were claimed as a gift and show that they were directly converted into a certain percentage of the stock of the corporation.
 

 The only evidence offered as to the total value of property exchanged for the corporate stock shows this figure to be $19,-663. There is other evidence to show that other assets were transferred into and used by the corporation, but there is no evidence to show that these assets were exchanged for capital stock. The individual income tax return filed for the year 1969 on behalf of appellant and appellee reflects that the furniture, equipment and leasehold improvements were transferred to appellee by his father. The corporate return for the year 1970 shows what purports to be the same assets. The C.P.A. who opened the books on the proprietorship and the corporation testified that these were the same assets and that the depreciated value of these assets ($9365) was conveyed to the corporation in exchange for capital stock. The value of these items was not disputed at trial. Appellee’s duty to trace extended
 
 *823
 
 no farther than to prove that his separate property was exchanged for a certain percentage of the total of the capital stock and to show that the stock had been held by him since the time of issuance. The finding that 47% of the corporate stock is the separate property of appellee was not against the great weight and preponderance of the evidence.
 

 Appellant next contends that the trial judge abused his discretion in awarding virtually all of the income producing property to appellee and in giving appellant a money judgment payable in six annual installments with interest at the rate of 9% per annum.
 

 Appellant cites
 
 Musick v. Musick,
 
 590 S.W.2d 582 (Tex.Civ.App.-Tyler 1979, no writ) in support of her position and in many respects the case is remarkably similar to ours. In that case the husband received all of the income producing assets and almost all of the debts and gave judgment to the wife against the husband in an amount calculated to equalize the net amount each would receive. The court held that the division was manifestly unjust and unfair, apparently because of the likelihood that the wife would never receive at least some, if not the major, portion of the property awarded her. The risk of appellant not receiving the assets awarded her is much less in our case.
 

 The various appraisals of the restaurant’s worth ranged from less than $600,000 to slightly under $2,000,000. These appraisals were made based on almost every conceivable assumption involving the availability or nonavailability of appellee and the presence or absence of a non-competition agreement. After considering all of the evidence concerning the evaluation of the restaurant by the court, we are of the opinion that the $1,000,000 valuation by the court was a fair one. In dividing a marital estate, in addition to the considerations mentioned, the trial court must, if it is to be at all practical, consider the nature of the assets to be divided and the utility of these assets to one or other of the parties, the value of the asset when awarded to one as opposed to the other and the ability to maintain or keep the asset. For example, in our case it would be have been ill advised for the court to award the restaurant to appellant and require her to pay appellant a large amount for his community share of the stock. Generally, the court awarded appellee the property which required a healthy cash flow to maintain while the assets awarded to appellant required little maintenance. Appellant’s share tended toward liquidity more than the share awarded to appellee. We do not consider the manner of the division by the court to be unfair.
 

 Appellant next contends that the division of the property made by the court was so manifestly unfair as to amount to an abuse of discretion. A trial court has broad discretion in dividing the estate of the parties and this discretion will not be disturbed unless an abuse of discretion is shown.
 
 McKnight v. McKnight,
 
 543 S.W.2d 863 (Tex.1976). In making the division, the court may consider the disparity of earnings powers, business opportunities, employment prospects, health of the parties, welfare of the children and the parties’ separate property.
 
 Clay v. Clay,
 
 550 S.W.2d 730 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ). Both of the parties are young, healthy and capable, although there is a great difference in their respective earning capacities ($200,000 vs. $9600). Appellee has worked in the restaurant business since his early teens and, according to the evidence, is one of the most knowledgable persons in all phases of the restaurant business. Appellant has limited business experience and at the time of trial was working as a secretary at a salary of about $800 per month. Ap-pellee’s separate property amounted to several times the value of that of appellant ($470,000 vs. $71,000). The business opportunities of appellee appear from the record to be much greater than those of appellant because he has worked in the business while appellant has been primarily occupied as a housewife. The above facts would tend to support an unequal division in favor of appellant, especially since the evidence clearly shows that the increase in the value of the stock separately owned by appellee was di
 
 *824
 
 rectly attributable to the labors of one or both of the community partners.
 

 During the marriage, the value of the corporation’s stock increased from approximately $20,000 to $1,000,000 and the value of that portion of the stock found to be separate property increased from $9,365 to $470,000. All of the increase is attributable to the labor and skill of one (and probably both) of the spouses. This situation is clearly distinguishable from that where one of the spouses held stock on a major exchange as his or her separate property which increased in value because of reasons other than the time and effort of one or both of the spouses.
 

 According to appellant’s computations, which for the sake of argument were assumed by appellee to be true, appellee received in addition to the 47% of the stock set aside to him as his separate property, a net community estate equal to' 48.6% while appellee received 51.4%. Had there been no large appreciation of the separate stock by reason of community labor, this division would not be unreasonable. Appellee was granted custody of the two minor children bom of the marriage and is required to pay appellant the sum of $100 per day during the summer when the children are in her custody. Also, there are tax liabilities incidental to the property received by appellee which would reduce his net share.
 

 We are convinced that the court, in making a division of the estate, did not take into consideration the large increment to appellee’s separate property by reason of community labor and as a result the division of the estate was manifestly unfair to appellant. This point of error is sustained.
 

 Appellant’s last point of error contends that the finding of the court that Tony’s Restaurant, Inc. is not the alter ego of Tony Vallone is against the great weight and preponderance of the evidence.
 

 There is little doubt that in many respects the financial and business end of the corporation is operated with great informality. Cash is taken from the business when it is needed for personal expenses; neither officer nor directors’ meetings are held on a regular basis; and the corporation is ran by appellee rather than by its officers or a board of directors. This is not uncommon in a closed corporation. Generally, the corporate form will be disregarded where: (1) the corporation is used as a means for perpetuating a fraud, (2) the corporation is organized and operating as a mere “tool” or “business conduit” of another corporation, (3) resort is made to the corporate fiction in order to avoid an existing legal obligation, (4) the corporate form is used to achieve or perpetuate a monopoly, (5) the corporate structure is used as a vehicle for circumventing a statute, or, (6) the fiction is invoked in order to protect crime or justify a wrong.
 
 Wolf v. Little John Corp. of Liberia,
 
 585 S.W.2d 774 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ).
 

 Although many acts by appellee deviated from ideal management practices, there is no showing or indication that these acts were committed for the purpose of perpetrating a fraud on appellant or others or that in fact a fraud resulted as a result of the acts. This point is overruled.
 

 We affirm the judgment except as to that portion pertaining to the division of the estate of the parties; that part of the judgment is reversed and remanded.