Carlis COLE, et al., Plaintiff,

v.

The TOBACCO INSTITUTE,
et al., Defendants.

No. 1;97–CV–256.

United States District Court,
E.D. Texas,
Beaumont Division.

March 26, 1999.

exhibits for the court's consideration in ruling on the motion to dismiss.

## ANALYSIS

If a defendant contests personal jurisdiction by way of a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction over the defendant. *Kevlin Serv. Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir.1995); *Constr. Aggregates Inc. v. Senior Commodity Co.*, 860 F.Supp. 1176 (E.D.Tex.1994) *aff'd* 48 F.3d 531 (1995). Plaintiff need only, however, present facts sufficient to constitute a *prima facie* case. *WNS, Inc. v. Farrow*, 884 F.2d 200 (5th Cir.1989). A *prima facie* case may be established "by alleging facts sufficient to establish jurisdiction over the non-resident defendant." *Caldwell v. Palmetto Sav. Bank*, 811 F.2d 916, 917 (5th Cir.1987). The court must view the evidence in the light most favorable to the plaintiff, resolving all conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg*, 754 F.2d 542 (5th Cir.1985); *Breen v. Centex Corp.*, 695 F.2d 907 (5th Cir.1983).

Robert Carl Hilliard, Hilliard & Munoz, Corpus Christi, TX, Russell W. Heald, Hilliard & Heald, Beaumont, TX, for plaintiff.

Tanner T. Hunt, Jr., Wells, Peyton, Greenberg, Hunt & Crawford, Beaumont, TX, Mary Elizabeth McGarry, John J. Kenney, Gerald E. Hawxhurst, Brian C. Lake, David M. Moss, Ronald M. Neumann, James M. McLaughlin, Simpson, Thatcher & Bartlett, New York City, for defendants.

## *MEMORANDUM OPINION*

COBB, District Judge.

The Plaintiffs have brought suit against tobacco manufacturers for themselves and purportedly for all other persons in Texas who are similarly situated; i.e. cigarette smokers, past and present, or their survivors and next of kin.

One of the defendants, B.A.T. Industries p.l.c., has filed a motion to dismiss for lack of personal jurisdiction on the grounds that it is merely a holding company based in Great Britain without any connection to the cigarette industry in the United States, and therefore exempt from having personal jurisdiction exercised over it.

In response, Plaintiffs have filed with the court literally hundreds of documents, depositions, affidavits and other discovery

Plaintiff bases the existence of this court's personal jurisdiction over B.A.T. Industries p.l.c. on the Texas Long–Arm Statute. Tex.Civ.Prac. & Rem.Code Ann. §§ 17.041–045 (1986). In deciding whether the long–arm statute confers jurisdiction over a non-resident defendant in a diversity suit, a two-part test must be applied: (1) the defendant must be amenable to service under the statute and (2) whether the statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983) *citing Walker v. Newgent*, 583 F.2d 163, 166 (5th Cir.1978). In Texas, because the state Supreme Court has established that the Texas long-arm statute extends to the limits of federal due process, these two steps collapse into one. *Ruston Gas Turbines, Inc. v. Don-*

*aldson Co., Inc.,* 9 F.3d 415 (5th Cir.1993) *citing Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Consequently, Plaintiffs need only establish that, pursuant to the due process clause of the Fourteenth Amendment, (a) defendant has established "minimum contacts" with the forum state; and (b) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Ruston,* 9 F.3d at 421.

■ The determination of minimum contacts has been refined to determine two types of personal jurisdiction: specific and general. In order to establish specific jurisdiction, plaintiff must provide evidence of actions, or even just a single act, by which the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." 9 F.3d 415. The non-resident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *Ruston,* 9 F.3d at 419 *citing World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Several legal doctrines exist under which Defendants B.A.T. Industries should reasonably have anticipated being haled into court in Texas. These include: (1) stream of commerce (2), the Calder doctrine, and (3) tortious fraud. Each one of these doctrines is sufficient to establish personal jurisdiction over B.A.T. Industries, p.l.c.∴.

■ According to the stream of commerce doctrine, a corporation that places its products into the stream of commerce with the expectation that it will be purchased in the forum state is liable under suits brought in that state. *World–Wide Volkswagen,* 444 U.S. 286, 297–298, 100 S.Ct. 559. Defendant counters the application of the stream of commerce theory on the grounds that it did not actually "manufacture" cigarettes, but rather, was

merely a "holding company" that did little more than simply own B & W Tobacco (the manufacturer). (B.A.T. Ind. Reply Memo p. 21). This claim, in light of extensive evidence submitted by Plaintiffs, lacks support. Contrary to the assertions of the Defendants, Plaintiffs provide considerable evidence asserting that B.A.T. Industries transcended the role of a "holding company" and actively participated in the research and design of cigarettes sold by its subsidiaries. Perhaps the most damning example of this can be found in Plaintiff's Exhibit # 54, a deposition of Jeffrey S. Wigand, the former research chief for B & W Tobacco (for evidence of Wigand's role as chief researcher see Plaintiff's Exhibit # 47). Wigand reveals the extent to which research was coordinated jointly throughout B.A.T. Industries, as well as efforts on the part of B.A.T. Industries to alternately control and suppress certain types of research conducted by B & W (most notably biological research, research into the practicability of making safer cigarettes, and research into the addictive qualities of nicotine as well as the health effects of certain noxae, or poisons, in cigarettes).

Another example of the integrated nature of research within B.A.T. Industries is Plaintiff's Exhibit # 159, B.A.T.'s report of a Research Conference in Rio de Janeiro, Brazil. This report shows the extent to which research and design concerned not simply B & W Tobacco, but the entire "B.A.T. group" including B.A.T. Industries. The report states on page 2:

> [T]o meet the 1983 B.A.T. Industries guideline ... Group R & D 'should be maintained at a level sufficient to, at least, keep pace technically with major competitors,' the Group R & D Programme at Southampton must carry major responsibility for the Groups' longer-term needs for fundamental research aimed at *generating radically new products and process, and for strategic defense.* [emphasis added]

As the above report suggests, the research and development conducted at Southamp-

ton played a major role in creating and designing products not only for any one subsidiary of B.A.T., but for the group as a whole. Further, the research that was conducted at Southampton sought not simply to generate new products, but also to assist in "strategic defense." The fact that B.A.T. listed strategic defense as a major responsibility of the group-wide research institution reveals an awareness on its part (as a group) of potential liability in tobacco-related suits. If, as B.A.T. tries to claim, it was simply a holding company, it stretches or defies credulity that it would have had the integrated research program aimed at responding to potential litigation which it did.

Indeed, rather than simply a holding company which left the research and design of its subsidiaries' products up to them, the report of the Research Conference in Rio de Janeiro reveals that B.A.T. Industries encouraged an "interchange of technology" (Ex. # 159, p. 2) among its various subsidiaries, and, with that, scrutiny and control of almost every aspect of the manufacture and design of cigarettes, including attention to the design of filters as well as the carcinogenity of cigarettes (Ex. # 159, p. 18). Also see Plaintiff's Exhibit # 191, B.A.T.'s Central Research and Development Report, stating, for example, "As a responsible manufacturer . . . BAT has been, and continues to be, closely attentive to the scientific debate on this issue [cigarette smoking]. Thus, for 25 years, BAT has been investing in, and reporting on, extensive research into the issues involved in smoking and health." For evidence of the extent to which B.A.T. Industries monitored and directed the actual marketing of cigarettes sold by B & W in the U.S., see Plaintiff's Exhibit # 384, where directives were issued regarding specific brands of cigarettes, most notably Kool. (See also Plaintiff's Exhibits # 395, 396, 397 and 398).

That contributing to the marketing, research and design of a product qualifies a corporation as a manufacturer under the stream of commerce theory is supported by the United States Supreme Court decision in *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 111, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (holding that designing a product for a state's market qualifies a party under the stream of commerce theory). A less rigorous application of this same test was adopted by the 5th Circuit in Texas in *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. 1993). Further, courts in both Kansas (*Wessinger v. Vetter Corporation*, 685 F.Supp. 769, 777 (D.Kan.1987) (holding that a motorcycle designer is liable under the stream of commerce test in *Asahi*)) and Utah (*Warren v. Honda Motor Co. Ltd.;* 669 F.Supp. 365 (D.Utah 1987) (also holding that motorcycle designers qualify as manufacturers)) have established that designers are liable under the stream of commerce doctrine.

In addition to the stream of commerce theory, Plaintiffs also allege jurisdiction under *Calder v. Jones,* 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder,* the United States Supreme Court held that a defendant should reasonably anticipate being haled into court where the effects of its conduct have been intentionally caused through the purposeful direction of activity toward the forum state, even if the defendant never physically enters the state. Defendant attempts to argue that *Calder* does not apply to this case because it involved a specific plaintiff in a specific state. B.A.T. Industries maintains, consequently, that if its intentional wrongdoing was aimed at more than one state, then the *Calder* test is not met. This, however, goes against common sense. It implies that a party can avoid liability by multiplying its wrongdoing. On the contrary, as stated in *Commonwealth of Massachusetts v. Philip Morris Inc.*, Civ. No. 95–7378–J (Super.Ct.Middlesex Co. March 20, 1998), "Where the wrongdoer is committing an intentional tort, and knows where the effects of that intentional tort will be felt, it does not

offend due process to hale that wrongdoer into court in the places where he knew his wrongdoing would cause injury." *Id.* At 15. And:

> The fact that the alleged intentional wrong was directed at many states instead of just one should not have the result that B.A.T. Industries p.l.c. can not be sued anywhere in the United States. *Calder* does not suggest such a result. Rather, under *Calder,* the fact that B.A.T. Industries p.l.c. aimed its alleged wrongdoing at the entire United States gives it the requisite "minimum contacts" with each state where that alleged wrongdoing caused injury. *Id.* At 15.

The Superior Court of Middlesex County is not the only court to have found B.A.T. liable under *Calder.* B.A.T. was also found responsible under *Calder* in a recent Superior Court decision in King County, Washington. *State of Washington v. American Tobacco Co., Inc. et al.,* No. 96–2–15056–8 SEA (Sup.Ct.King Co.) There, the Court held that pursuant to *World–Wide Volkswagen* and *Calder v. Jones,* 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), B.A.T. Industries, through its control of centralized research functions, its direction of specific marketing plans and its development of high-nicotine tobacco, "acted to cause the harms recited in the complaint" thereby tying it jurisdictionally to the state.

■ Another means of establishing jurisdiction is to focus on the extent to which B.A.T Industries p.l.c. employed its subsidiary B & W Tobacco as a means of mis-conveying health-related information about cigarettes. Pursuant to Texas law, a parent corporation can be found liable for the actions of its subsidiary if it can be established that the subsidiary existed to perpetrate a fraud or to avoid the law. *Miles v. American Tel. And Tel. Co.,* 703 F.2d 193 (5th Cir.1983).[1] If it is found that the corporation is used to perpetrate a fraud, then a piercing of the corporate veil is justified. *Edwards Company, Inc. v. Monogram Industries, Inc.,* 700 F.2d 994, 1000 (5th Cir.1983) *citing Minchen v. Van Trease,* 425 S.W.2d 435, 437 (Tex.Civ.App. 1968); *see also Vallone v. Vallone,* 618 S.W.2d 820, (Tex.Civ.App.1981) (holding that a corporate form will be disregarded where the corporation is used as a means for perpetuating a fraud, avoiding a legal obligation, protecting crime or justifying a wrong); *Wolf v. Little John Corporation of Liberia,* 585 S.W.2d 774, 778(Tex.Civ.App.—Houston [1st Dist.]) (holding that corporate form will be disregarded where the corporation is used as a means for perpetuating a fraud or avoiding an existing legal obligation).

■ Plaintiffs in this case provide a considerable amount of evidence, and at minimum enough to create a material issue of fact, that Defendant B.A.T. Industries, p.l.c. employed its subsidiary B & W Tobacco as a means of avoiding legal obligations and perpetuating fraud. The deposition of former chief of research for B & W Tobacco, Jeffrey S. Wigand, alone reveals not only efforts on the part of B.A.T. Industries to suppress information regarding cigarettes produced by B & W Tobacco, but also a variety of mechanisms designed by B.A.T. Industries to effectively conceal research conducted by B & W. One such mechanism included a strategy requiring B & W Tobacco to send back to

---

**1.** According to *Hargrave v. Fibreboard,* 710 F.2d 1154 (5th Cir.1983) a foreign parent corporation is generally not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there. 710 F.2d at 1159. However, in some circumstances a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries. 710 F.2d at 1159. The rationale for such an exercise of jurisdiction is that the parent corporation exerts such domination and control over its subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." 710 F.2d at 1159 *citing* 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[6], at 4–272 (2d ed.1982).

England potentially damaging research that it had conducted on cigarettes in an effort to render it unavailable and undiscoverable.

Further evidence that B.A.T. Industries p.l.c. employed its subsidiaries to perpetuate fraud is the fact that it included regularly in its Statements of Business Conduct that all subsidiaries were to deny that any scientific causation existed between smoking and disease (See B.A.T. Industries p.l.c. Statement of Business Conduct, Plaintiff's Exhibit # 52), when evidence dating back to the 1950's had established precisely the opposite. In light of this evidence, as well as the deposition of Jeffrey Wigand, a prima facie case establishing that B.A.T. Industries employed its subsidiaries to perpetuate fraud exists. To find B.A.T. Industries p.l.c. jurisdictionally bound on these grounds would not offend traditional notions of fair play or substantial justice, and would therefore fulfill all the requirements of the personal jurisdiction test.

Even if the corporate veil was not pierced, B.A.T. Industries, p.l.c., could still be found liable under a tort claim. According to such a claim, B.A.T. Industries could be found to have committed tortious fraud separately and independently from the actions of its subsidiaries. B.A.T. Industries' own Statements of Business Conduct, for example, are evidence of this. In its Business Conduct Statement from December 1993, for example, B.A.T. asserted that:

> It is the considered view of the Group that (1) scientific causation between smoking and diseases allegedly related to smoking has not been established; and that (2) the Group should not make health claims for tobacco products in connection with product promotion.

As the above quote shows, B.A.T. Industries, p.l.c. had an official position (as a "group") on the relationship between smoking and diseases. If what Plaintiffs allege is true, then this position was fraudulent and B.A.T. Industries' invocation of it was a tortious fraud. Further, the fact that the Group, as a whole, would be making health claims for tobacco products, suggests strongly that the relationship between B.A.T. Industries, p.l.c. and its subsidiaries was significantly more involved than merely one of a holding company and its otherwise independent holdings.

Personal jurisdiction aside, Plaintiffs also allege that general jurisdiction exists over B.A.T. Industries. Specifically, Plaintiffs claim that B.A.T. Industries p.l.c. have, through their active marketing of shares in their ordinary stock in the United States, their encouragement of trading of their ADR's on the American Stock Exchange, their frequent meetings with American investors in the United States, and their application for approval of acquisition with the Texas Commissioner of Insurance in relation to their acquisition of Farmers Group, Inc. established continuous and systematic contacts with the United States [For a description of the requirements of continuous and systematic contacts *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987) ]. Although defendants contest this issue, the United States District Court for the Eastern District of Texas in Texarkana found jurisdiction over B.A.T. Industries on just these grounds. *See The State of Texas v. The American Tobacco Co., et. al.,* No. 5–96CV–91 (Order Denying Defendant B.A.T. Industries, P.L.C.'s Motion to Dismiss the Fourth Amended Complaint for Lack of Personal Jurisdiction). There, the Court stated that B.A.T. Industries intent to control its ADR program in the United States coupled with its activities directed to attracting U.S. investors show continuous and systematic activity in the United States sufficient to establish general jurisdiction. Therefore, it is reasonable to hold that jurisdiction exists on these grounds as well.

## CONCLUSION

A variety of courts have ruled on motions to dismiss by B.A.T. Industries, p.l.c. in cases brought by smokers similar to the one at hand. The court finds that of these rulings, those which held against B.A.T. Industries' motions to dismiss are better researched and better reasoned. *See e.g.* "Order Denying B.A.T. Industries' Motion to Dismiss for Lack of Personal Jurisdiction in *Dunn v. RJR Nabisco holdings Corp.*" Mp 18D01–9305–CT–00006 (Ind.Super.Ct. Oct. 10, 1997) (Barnet, J); "Order Denying B.A.T. Industries' Motion to Dismiss for Lack of Personal Jurisdiction in *Commonwealth of Massachusetts v. Philip Morris Inc.,*" Civ. No. 95–7378–J (Super.Ct.Middlesex Co. Mar. 20, 1998) (Sosman, J.); "Order Denying B.A.T. Industries' Motion to Dismiss for Lack of Personal Jurisdiction in *Pedro Rossello, Governor of the Commonwealth of Peurto Rico, et al. V. Brown & Williamson Tobacco Corp., et. al.,*" Civil. No. 97–1910(JAF) (D.P.R. June 2, 1998) (Fuste, J.); "Order Denying B.A.T. Industries Motion to Dismiss for Lack of Personal Jurisdiction in *State of Montana ex rel. Joseph P. Mazurek v. Philip Morris, Inc., et al.,*" No. CDV–97–306 (Mont.Dist. Ct., Lewis and Clark County Sept. 22, 1998) (Honzel J.); "Order Denying Defendants B.A.T. Industries P.L.C., BATUS Holdings, Inc. and American Brands, Inc.'s Motions for Summary Disposition Based on a Claimed Lack of Personal Jurisdiction in *Kelley ex rel. Michigan v. Philip Morris Incorporated, et al.,*" No. 96–84281–CZ (30th Cir.Jud.Ct., Ingham County Sept. 24, 1998) (Glazer L). Those decisions which grant the motion to dismiss tend to be less persuasive, in this court's opinion.

In arriving at these conclusions and findings, this court has examined over 400 exhibits containing in excess of 10,000 pages supplied by the Plaintiffs in this case. Although several of these documents have been specifically cited in the above opinion, many have not and are perhaps best viewed in the aggregate rather than individually, if for no other purpose than to save time. Upon such a viewing, the court finds that at issue in this motion is not an isolated incident, or series of isolated incidents, but rather, a pattern and practice of conduct in which B.A.T. Industries, p.l.c. waged a highly integrated campaign to fraudulently misrepresent the true risks of cigarette smoking. A significant number the victims of this campaign, this court further finds, are citizens of Texas. For this reason, and for the reasons cited above, Defendant B.A.T. Industries p.l.c. motion to dismiss should be denied.