In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-03-059 CV


____________________



THE STATE OF RIO DE JANEIRO OF THE 


FEDERATIVE REPUBLIC OF BRAZIL, Appellant



V.



PHILIP MORRIS INCORPORATED, B.A.T. INDUSTRIES, P.L.C.,


BROWN & WILLIAMSON TOBACCO CORPORATION, 


R. J. REYNOLDS TOBACCO COMPANY, AND 


LORILLARD TOBACCO COMPANY, Appellees






On Appeal from the 217th District Court


Angelina County, Texas


Trial Court Cause No. 32198-99-7






OPINION


 Rio de Janeiro of the Federative Republic of Brazil filed this lawsuit in the district
court of Angelina County, Texas, against various nonresident defendants in an effort to
recoup billions of dollars expended on healthcare because of smoking-related illnesses. 
The trial court found it did not have jurisdiction over the defendants and granted the
special appearance motions of Philip Morris, Inc., R. J. Reynolds Tobacco Company,
Lorillard Tobacco Company, B.A.T. Industries, p.l.c., and Brown & Williamson Tobacco
Corporation. Rio appealed. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon
Supp. 2004). We affirm the trial court's order.

Personal Jurisdiction


 Texas courts may exercise personal jurisdiction over a nonresident defendant if the
Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent
with due process. See American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d
801, 806 (Tex. 2002); see Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.044 (Vernon
1997), § 17.045 (Vernon Supp. 2004). The broad language of the Texas statute permits
an expansive jurisdictional reach, limited only by the requirements of due process. 
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). If a nonresident defendant has
"minimum contacts" with Texas, and maintenance of the lawsuit does not offend
"traditional notions of fair play and substantial justice," jurisdiction is proper under the
due process clause. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct.
154, 90 L.Ed. 95 (1945); American Type Culture Collection, 83 S.W.3d at 806. 

 Minimum contacts may support either specific jurisdiction or general jurisdiction. 
See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct.
1868, 80 L.Ed.2d 404 (1984); BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d
789, 795-96 (Tex. 2002). General jurisdiction is present when a defendant's contacts in
a forum are continuous and systematic; the forum may exercise personal jurisdiction over
the defendant even if the cause of action does not arise from or relate to activities
conducted within the forum state. BMC Software, 83 S.W.3d at 796. Specific jurisdiction
is present if the defendant's liability arises from or is related to an activity conducted
within the forum. Id. To satisfy due process, under either general or specific jurisdiction
the exercise of jurisdiction must not be unreasonable; that is, the exercise of jurisdiction
must comport with traditional notions of fair play and substantial justice. Guardian Royal
Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 228-33 (Tex.
1991). 


Standard of Review


 Whether a court has jurisdiction over a defendant is a question of law subject to de
novo review. American Type Culture Collection, 83 S.W.3d at 805-06. The plaintiff bears
the initial burden of pleading sufficient allegations to bring a nonresident defendant within
the long-arm statute's provisions, and the defendant must negate all jurisdictional bases. 
BMC Software, 83 S.W.3d at 793. The reviewing court determines the special appearance
on the basis of the pleadings and the evidence presented to the trial court. (1) Allianz Risk
Transfer (Bermuda) Ltd. v. S.J. Camp & Co., 117 S.W.3d 92, 95 (Tex. App.--Tyler 2003,
no pet.). 

Fair Play and Substantial Justice


 Rio's first issue addresses jurisdiction over the four manufacturing defendants:
Philip Morris Incorporated, Brown and Williamson Tobacco Corporation, R.J. Reynolds
Tobacco Company, and Lorillard Tobacco Company. Rio says these defendants' contacts
with Texas give rise to general jurisdiction. "General jurisdiction is premised on the
notion of consent." American Type Culture Collection, 83 S.W.3d at 808. The notion is,
by invoking the benefits and protection of Texas law, a nonresident defendant consents to
being sued in Texas. Id.

 The four defendants stipulated to continuous and systematic contacts with Texas. 
Rio stipulated it was not claiming specific jurisdiction. The parties' stipulations narrow
the issue to whether the exercise of jurisdiction over the defendants would comport with
traditional notions of fair play and substantial justice. (2) The Texas Supreme Court has
outlined the following factors to be considered in deciding the "fair play and substantial
justice" question: 

 (1) the burden on the defendants;

 (2) the interests of the forum state in adjudicating the dispute, including the
State's regulatory interest;

 (3) the plaintiff's interest in obtaining convenient and effective relief;

 (4) the interstate judicial system's interest in obtaining the most efficient
resolution of controversies;

 (5) the shared interest of the several states in furthering fundamental
substantive social policies; 

 (6) in an international dispute, the unique burdens placed upon the defendant
which must defend itself in a foreign legal system; and

 (7) the procedural and substantive policies of other nations whose interests
are affected as well as the federal government's interest in its foreign
relations policies. 


Guardian Royal, 815 S.W.2d at 228-30; Siemens AG v. Houston Cas. Co., 127 S.W.3d
436, 440 (Tex. App.--Dallas 2004, pet. filed); see also Asahi Metal Indus. Co. v. Superior
Court, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). "[I]t is incumbent
upon the defendant to present a 'compelling case that the presence of some [other]
consideration[s] would render jurisdiction unreasonable.'" Guardian Royal, 815 S.W.2d
at 231 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85
L.Ed.2d 528 (1985) (alteration in original)). The fairness issues outlined in Asahi and
Guardian Royal are to be evaluated in light of the minimum contacts otherwise shown to
exist. See Burger King, 471 U.S. at 476. Rio contends the first five factors listed in
Guardian Royal support an exercise of jurisdiction over this claim. (3) 

The Burden on Defendants


 Rio says litigating in Texas imposes a minimal burden on the defendants. The
defendants say the discovery process, much of which will occur in Brazil, is unduly
burdensome. They claim they will not be able to obtain adequate discovery there to defend
this lawsuit. Defendants also say maintaining the lawsuit in Texas would be significantly
more burdensome than in other states: none of the manufacturing defendants is
headquartered or incorporated in Texas; none has more than a sales support presence in
Texas; none of the relevant personnel are alleged to have ever been located in Texas; and
no relevant activity is alleged to have occurred in Texas.

 The difficulties of obtaining discovery in Brazil will be similar no matter where in
this country plaintiff brings the lawsuit. The defendants are not all incorporated in the
same state. All the defendants are authorized to do business in Texas and have registered 
agents in Texas. Distance alone is insufficient to defeat jurisdiction. Modern
transportation and communication make it less burdensome for a party to defend itself in
a state where it does business. See Bossiere v. Nova Capital, LLC, 106 S.W.3d 897, 906
(Tex. App.--Dallas 2003, no pet.). Rio says Defendants sell over 28 billion cigarettes in
Texas each year, a considerable amount of business activity and an amount the defendants
do not dispute. The defendants' contacts with Texas lessen the burden of defending the
lawsuit. See Daimler-Benz Aktiengesellschaft v. Olson, 21 S.W.3d 707, 726 (Tex. App.--Austin 2000, pet. dism'd w.o.j.). The burden on defendants of litigating this case in Texas
does not by itself preclude the exercise of jurisdiction. 

Interests of the Forum State


 Rio argues the interests of Texas in adjudicating the dispute are as good as that of
any other forum. The dispute is international. Relying on Daimler-Benz
Aktiengesellschaft, 21 S.W.3d at 726, Rio says the federal government's foreign policy
interests are not hindered when individual states ensure that large international companies
redress wrongs the companies have caused around the world. Rio points out the torts
alleged in this lawsuit are the same as those litigated in The State of Texas v. The American
Tobacco Co., 14 F. Supp.2d 956 (E.D.Texas 1997). However, Texas was a party to that
litigation and the damages occurred in Texas. Neither Texas nor its residents are seeking
redress of any wrong in this case.

 The defendants argue Rio's claim has no effect on Texas residents. The parties are
not residents of Texas. The conduct from which the claims arise did not take place in
Texas. The products were not manufactured in Texas. No Texas property interest is at
stake. They say Texas has no greater interest than any other state in providing a process
for the recovery of Rio's damages. 

 We agree Texas does not appear to have an interest in adjudicating this specific
dispute, a dispute involving tortious conduct and damages occurring outside the borders
of Texas and unrelated to defendants' business in Texas. See generally Guardian Royal,
815 S.W.2d at 233; Allianz Risk Transfer (Bermuda) Ltd., 117 S.W.3d at 97; James v.
Illinois Cent. R.R. Co., 965 S.W.2d 594, 599 (Tex. App.--Houston [1st Dist.] 1998, no
pet.).

Rio's Interest in Obtaining Convenient


And Effective Relief



 Rio says its interest in obtaining convenient and effective relief weighs in favor of
litigating in Texas. Relying on defendants' expert's affidavit, Rio says the case, if tried
in Brazil, would be subject to an inefficient, corrupt, and delay-ridden system in a state of
crisis and chaos. No party to this case disputes the difficulties inherent in trying the case
in Brazil. But the disadvantages of a foreign judicial system, coupled with the decision by
some defendants to not challenge jurisdiction in Texas, does not mean the most convenient
and effective relief is to be found in Texas. See generally Kinney Sys., Inc. v. Continental
Ins. Co., 674 So.2d 86, 91 n.4 (Fla. 1996) (forum non conveniens context) (citing Islamic
Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 478, 478 N.Y.S.2d 597, 467 N.E.2d 245
(1984)). Other states -- where the companies are incorporated, headquartered, or have a
manufacturing or research facility -- offer convenient and effective relief. 

 Interstate Judicial System's Interest in 


Obtaining the Most Efficient Resolution 



 Rio argues that if the trial court's order is upheld, Rio will be forced to litigate in
two forums -- one in Texas, because three of the defendants have not contested jurisdiction
in Texas, and one in a second forum, where jurisdiction may be obtained over the
remaining defendants. Rio offers no explanation, case law, or statute to support its
contention that jurisdiction cannot be obtained elsewhere over the three defendants not
contesting Texas jurisdiction. The torts alleged by Rio occurred in places other than Texas
and involved residents of either Brazil or other states of the United States. As between
Texas and the states in which the defendants' conduct occurred, or where the defendants
are incorporated or headquartered, we see no greater ability in Texas to provide an
efficient resolution of the controversies. See generally Allianz, 117 S.W.3d at 97; John
Doe I v. Roman Catholic Archdiocese of St. Louis, 109 S.W.3d 928, 931 (Tex. App.--Dallas 2003, no pet.) (Judicial efficiency would be served by litigating this dispute in the
state in which most parties reside, most witnesses are likely to reside, and the alleged torts
occurred.). 

 Rio also argues that because significant pretrial activity has occurred in Texas,
Texas is a more efficient forum. But the pretrial activity involved the discovery associated
with the special appearance motions and the hearing on those motions. Based on this
record, we do not find the interstate system's interest in obtaining the most efficient
resolution of the case is served by litigating these claims in Texas. 

 Shared Interests of States In 


Furthering Substantive Social Policies



 Rio says that where there is no other state ("except arguably the defendants' home
states") with a superior interest to Texas, jurisdiction should be exercised by Texas. A
Texas court could determine and apply the proper substantive law to this dispute. But the
states where the defendants are incorporated, have their principal places of business, or
have manufacturing or research facilities have a direct interest in any substantive law
associated with this lawsuit. Defendants use other states as home in the conduct of their
business, and those states have a strong interest in governing the conduct of their residents.

 Considering all the Guardian Royal factors appropriate here, we conclude a Texas
court's exercise of jurisdiction over these defendants in this dispute would be an overreach
of its authority. 

 B.A.T. Industries And Res Judicata


 Rio also argues the trial court erred in failing to find personal jurisdiction over
B.A.T. Industries, p.l.c. Rio pleaded jurisdiction over BAT through BAT's dominating,
alter ego, and agency relationship with its subsidiary B&W. BAT's special appearance
motion contended (a) it had no minimum contacts with Texas and (b) any exercise of
jurisdiction over it would not comport with fair play and substantial justice. Assuming
without deciding that BAT has minimum contacts with Texas, we conclude the fair play
and substantial justice analysis we have conducted applies equally to BAT. 

 Rio says a federal court has decided BAT is subject to the jurisdiction of courts in
Texas, and under res judicata principles we are bound by that decision. See Cole v. The
Tobacco Inst., 47 F. Supp.2d 812 (E.D. Tex 1999). The plaintiffs in Cole brought suit
against tobacco manufacturers "for themselves and purportedly for all other persons in
Texas who are similarly situated; i.e. cigarette smokers, past and present, or their
survivors and next of kin." See id. at 813. The court found a significant number of the
injured were citizens of Texas. Id. at 818. We do not see Cole as controlling our
decision. The court in Cole found specific jurisdiction over BAT; the finding of general
jurisdiction was not essential to the case. See id. at 817. But more to the point, because
we decide this case under the fair play and substantial justice factors set forth by the Texas
Supreme Court in Guardian Royal, the Cole court's determination of minimum contacts
does not answer the question presented here. General jurisdiction is sometimes described
as dispute-blind, because the contacts with the forum state are so significant the
nonresident defendant may be treated like a resident for all purposes in any litigation. See
Dickson Marine Inc. v. Panalpina, Inc., 179 F.3d 331, 339-41 (5th Cir. 1999)(General
jurisdiction focus is not on the cause of action, but on the presence or absence of
continuous and systematic contacts.). Nevertheless, under the fair play and substantial
justice analysis, a court cannot fully consider the interests of the forum state, the parties
involved, and other states without addressing the specific nature of the litigation. Even if
minimum contacts exist, the exercise of jurisdiction over a nonresident defendant in a
dispute may be unreasonable and so violate due process. See Guardian Royal, 815 S.W.2d
at 228-233.

 Conclusion


 Reviewing the Guardian Royal factors, we hold traditional notions of fair play and
substantial justice would be offended by the exercise of jurisdiction in Texas over PMI,
B&W, RJR, Lorillard and BAT under the circumstances involved in this dispute. Because
the exercise of jurisdiction over these defendants in this case would be unreasonable, we
hold the trial court did not err in granting the special appearance motions.

 Issues one and two are overruled. The district court's order is affirmed. 

 AFFIRMED.


 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on May 13, 2004

Opinion Delivered August 12, 2004


Before McKeithen, C.J., Burgess and Gaultney, JJ.

CONCURRING AND DISSENTING OPINION


 I concur in the affirmation as to B.A.T. However, unlike the majority, I would
decide the issue on the basis of no minimum contacts and not reach the "traditional notions
of fair play and substantial justice" issue. 

 I respectfully dissent to the other portion of the opinion. The majority correctly
limits their analysis to the first five Guardian Royal factors (4) and so shall I. 

The Burden on Defendants (5)


 As to the first factor, they conclude: "The burden on defendants of litigating this
case in Texas does not by itself preclude the exercise of jurisdiction." This implies there
is a burden and I do not accept that implication. I do, however, agree with their
conclusion regarding factor one.

Interests of the Forum State


 Regarding factor two, the majority states: "We agree Texas does not appear to have
an interest in adjudicating this specific dispute. . ." Obviously, I disagree. To borrow a
phrase from appellants, "this case has no center of gravity." PMI was incorporated in
Virginia and has its principal place of business in New York. RJR was incorporated in
New Jersey and has its principal place of business in North Carolina. B&W was
incorporated in Delaware and has its principal place of business in Kentucky. Lorillard
was incorporated in Delaware and has its principal place of business in North Carolina. 
There is no single state that has a greater interest than any other, including Texas. (6) 

Rio's Interest in Obtaining Convenient and Effective Relief


 The majority concludes: "But the disadvantages of a foreign judicial system,
coupled with the decision by some defendants to not challenge jurisdiction in Texas, does
not mean the most convenient and effective relief is to be found in Texas. [citations
omitted.] Other states - where the companies are incorporated, headquartered, or have a
manufacturing or research facility - offer convenient and effective relief." The majority
does not even analyze this factor utilizing the subtitle. The analysis under this factor is the
plaintiff's - Rio's interest in obtaining convenient and effective relief. This court stated
in E.I. DuPont De Nemours & Co. v. Bailey, 986 S.W.2d 82, 84-85 (Tex. App.--Beaumont 1999, pet dism'd w.o.j):

 The plaintiffs chose Texas as their forum; therefore, we can presume
they do not find it inconvenient or ineffective.

 DuPont claims discovery will be "more convenient" for the plaintiffs
if trial is had in Alabama. The issue is not one of more or less
convenience--that is a forum non conveniens argument over which we do not
have jurisdiction. Also, we would not presume to decide for the plaintiffs
what is convenient for them.


This is the correct focus, the convenience to the plaintiff, not general convenience. As in 
Bailey, this court should not presume to decide what is convenient for the plaintiffs.

Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution


 Here the majority simply concludes: "Based on this record, we do not find the
interstate system's interest in obtaining the most efficient resolution of the case is served
by litigating these claims in Texas." Again, I disagree.

 Three defendants, Joseph Dobbs, Brooke Groups Ltd., and Liggett Group, Inc. did
not file a special appearance in the trial court; consequently, the case against these
defendants will proceed in Texas. Again, as explained in Bailey, 

 The interstate judicial system's interest in obtaining the most efficient
resolution, the fourth factor, is clearly best served in Texas. There are other
defendants, properly under Texas jurisdiction, included in the suit. It is
surely most efficient to conduct only one trial where possible. Texas is a
forum where the claims against all the defendants can properly be brought; 
conducting separate lawsuits would instead run counter to judicial economy
and would not further the interest of the interstate judicial system in
obtaining the most efficient resolution of controversies.

986 S.W.2d at 85.

I see no reason to retreat from our prior reasoning.



Shared Interest of States in Furthering Substantial Social Policies


 The majority analyzes this factor with four sentences. The first two state Rio's
position while the last two:

 But the states where the defendants are incorporated, have their principal places of
business, or have manufacturing or research facilities have a direct interest in any
substantive law associated with this lawsuit. Defendants use other states as home
in the conduct of their business and those states have a strong interest in governing
the conduct of their residents.


simply state the obvious. Nowhere in their analysis does the majority even identify the
fundamental substantial social policies implicated in this case, much less show how any
other states' interest in furthering these social policies is any greater than that of Texas. 
See General Refractories Co. v. Martin, 8 S.W.3d 818, 823-824 (Tex. App.--Beaumont
2000, pet denied).

Conclusion


 Our Supreme Court said it best in Guardian Royal:

 Only in rare cases, however, will the exercise of jurisdiction not comport
with fair play and substantial justice when the nonresident defendant has
purposefully established minimum contacts with the forum state. See Burger
King, 471 U.S. at 477-78, 105 S.Ct. at 2185; see also Schlobohm, 784
S.W.2d at 358 ("it has become less likely that the exercise of jurisdiction
will fail a fair play analysis.") The stringent standard to be applied is set
forth in Burger King:

 [W]here a defendant who purposefully has directed his
activities at forum residents seeks to defeat jurisdiction, he
must present a compelling case that the presence of some other
considerations would render jurisdiction unreasonable. . . . 


815 S.W.2d at 231.


 This court followed this analysis in Bailey, 986 S.W.2d at 83-84, and should follow
it in this case. This is not the rare case required by Guardian Royal nor did the defendants
make a compelling case as required by Burger King. This court should reverse the trial
court's granting of the special appearances of the PMI, B&W, RJR and Lorillard's
defendants. Because they do not, I respectfully dissent.


 
____________________________

 DON
BURGESS

 Justice


Opinion Delivered

August 12, 2004

1. Frequently, the trial court must resolve questions of fact before deciding the
jurisdictional question. BMC Software, 83 S.W.3d at 794. 
2. By footnote in their brief, PMI, RJR, B&W, and LTC say that continuous and
systematic contacts do not necessarily establish general jurisdiction. Defendants say they
really did not stipulate that their Texas contacts satisfy the threshold question of general
jurisdiction. They say general jurisdiction is available only when the continuous corporate
operation within a state is thought so substantial and of such a nature as to justify suit
against the corporation on causes of action arising from dealings entirely distinct from
those activities within the state. A "minimum contacts" analysis includes a qualitative as
well as a quantitative aspect. Because the parties have briefed only the "fair play and
substantial justice" requirement, and the requirement is dispositive here, we address only
that issue. 
3. Rio says factor six has no relevance and factor seven has "little relevance." Rio
does say denial of jurisdiction "might" damage foreign relations but offers no explanation
of what that damage would be. We agree factor six has no relevance to this case. In the
absence of an explanation from Rio of possible "adverse foreign-relations consequences,"
we limit our analysis to the first five factors. We consider the international nature of the
litigation, and Rio's status as a state government of Brazil, under those factors. We are
not persuaded by Rio's suggestion, in a footnote citing Pfizer, Inc. v. India, 434 U.S. 308,
318-19, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978), that declining to exercise jurisdiction under
the circumstances here somehow would indicate a "want of comity and friendly feeling." 
4. These are (1) "the burden on the defendant," (2) the interests of the forum state in
adjudicating the dispute, (3) "the plaintiff's interest in obtaining convenient and effective
relief," (4) "the interstate judicial system's interest in obtaining the most efficient
resolution of controversies," and (5) "the shared interest of the several States in furthering
fundamental substantive social policies." Guardian Royal Exchange Assur., Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991).
5. I will use the same subtitles as the majority.
6. It is common knowledge the State of Texas was a leader in litigation against major
tobacco manufacturers and achieved a significant settlement with those manufacturers.