**GENERAL REFRACTORIES COMPANY, Appellant,**

v.

**Inez MARTIN, et al., Appellees.**

No. 09–98–471 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 2, 1999.

Decided Jan. 13, 2000.

Rehearing Overruled Feb. 4, 2000.

---

S. Vance Wittie, W. Neil Rambin, Stasburger & Price, Dallas, Franklin A. Poff, Jr., Crisp, Jordan & Boyd, LLP, Texarkana, for appellant.

Glen W. Morgan, Richard J. Clarkson, Reaud, Morgan & Quinn, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

■ Approximately 4,000 Alabama residents ("appellees") brought suit against more than fifty defendants, including appellant General Refractories Company ("GRC"), in an asbestos personal injury case. Claiming the trial court lacked personal jurisdiction over it, GRC filed a special appearance motion, which the trial court denied.[1] By means of interlocutory appeal, GRC challenges the trial court's denial of that motion.[2]

## BACKGROUND

GRC is a Pennsylvania corporation that mined, processed, and manufactured refractory materials at various locations in the United States. According to Michael Cull, a vice president of GRC, one of those locations was a GRC plant in Troup, Texas, that produced the specialty refractory products. In 1941, more than fifty years ago, GRC filed an application for a Certificate of Authority to do business in Texas; thereafter, its application to do business in the state was periodically renewed until August 1994. The company sold its assets to A.P. Green Industries on August 1, 1994, and some two weeks later filed an Application for Certificate of Withdrawal with the Secretary of State. On August 17, 1994, the Secretary of State of Texas issued the Certificate of Withdrawal. Ac-cording to the affidavit of Michael Conley, the secretary of GRC, the company ceased to do business in Texas at the time it sold its operations in Texas to A.P. Green Industries.

## STANDARD OF REVIEW

■ To prevail in a special appearance, a non-resident defendant must negate all bases of personal jurisdiction. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). The standard of review in a special appearance motion and hearing is that of factual sufficiency. *Cadle v. Graubart*, 990 S.W.2d 469, 471 (Tex.App.— Beaumont 1999, no pet. h.). The trial judge, as the trier of fact, may draw reasonable inferences from the evidence. *Id.* "We may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust." *Id.*

## ISSUES

### *Minimum Contacts*

■ On appeal, GRC brings four issues, three of which deal with the existence of "minimum contacts." In essence, GRC claims that at the time appellees filed suit against it in Texas, GRC did not have sufficient "minimum contacts" with the state to warrant a Texas court's assumption of personal jurisdiction over it.

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Pro-

---

1. Although Tex.R. Civ. P. 120a requires a special appearance motion to be sworn, GRC's motion was not. The defect was never corrected by amendment. *See Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 795, 142 L.Ed.2d 657 (1999) (An unsworn special appearance motion may be amended to correct the defect as long as the amendment is filed before there is a general appearance.) At the hearing on the special appearance, GRC presented evidence in support of the motion, and appellees presented evidence against the special appearance motion. The evidence took the form of documents, depositions, affidavits, a letter, and excerpts from sales catalogs. Appellees did not raise the defect issue below and have not raised it on appeal. Therefore, we conclude the special appearance, though initially presented through a defective motion, was, by virtue of the hearing and the evidence submitted on that date, in effect, tried by consent. *See generally* Tex R. Civ P. 67, 90.

2. Tex. Civ. Prac. & Rem.Code Ann. § 51.014 (Vernon Supp.1999) permits an interlocutory appeal from the granting or denial of a defendant's motion under Rule 120a.

cess Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute [Tex. Civ. Prac. & Rem.Code § 17.042 (Vernon 1997)] are satisfied. The long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. In addition to a discrete list of activities that constitute doing business in Texas, the statute provides that "other acts" by the nonresident can satisfy the requirement. Our Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal [Exch. Assurance, Ltd. v. English China Clays, P.L.C.]*, 815 S.W.2d [223,] at 226 [(Tex.1991)]....

Under the Due Process Clause of the Fourteenth Amendment, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). A defendant should not be subject to the jurisdiction of a foreign court based upon "random," "fortuitous," or "attenuated" contacts. *Id.* ...

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See Schlobohm v. Schapiro*, 784 S.W.2d '355, 357 (Tex.1990). General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *See Guardian Royal*, 815 S.W.2d at 228. In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *See id.* at 227.

*CSR Ltd. v. Link*, 925 S.W.2d 591, 594–95 (Tex.1996) (some citations omitted).

According to GRC, appellees sought to establish jurisdiction in Texas on the basis of general jurisdiction alone. In their thirtieth amended pleading (the live petition in the case), appellees made the following jurisdictional allegations: "The defendants are actively engaged in business in the State of Texas. All plaintiffs and/or their decedents are residents of Alabama." Like GRC, we construe this language in appellees' petition to allege general jurisdiction, since the petition claims GRC was doing business in the state.

■ Although GRC acknowledges that appellees pleaded general jurisdiction, it contends appellees' petition contains no allegation of specific jurisdiction, since the petition does "not plead any act committed in or directed to Texas as a cause of any injury."[3] We disagree and find the following portion of appellees' petition is sufficient to raise specific jurisdiction:

*Count One*

....

---

3. Although appellees pleaded and offered evidence relating to specific jurisdiction, they did not argue specific jurisdiction in their response to GRC's special appearance motion or in their brief on appeal. Nonetheless, appellees' pleadings and evidence, taken together, raise and support a finding of minimum contacts through specific jurisdiction. Consequently, it was appellant's duty to negate the allegation of specific jurisdiction.

13. The asbestos products and materials produced, manufactured, distributed, sold and/or specified by the Specific Producers [of which GRC was one] and used or installed in or applied to the Plant Facilities [called Premises Owners in appellees' petition] and all worksites where all Plaintiffs worked were unreasonably dangerous when applied to their intended use in the usual and customary manner, and the Specific Producers caused the unreasonably dangerous materials and products to enter the market, as a proximate result of which Plaintiffs were exposed and suffered grave and progressive bodily injury.

The Texas Supreme Court has held that specific jurisdiction is established if (1) the defendant's activities were purposefully directed to the forum and (2) the litigation resulted from alleged injuries that arise out of or relate to those activities. *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 774 (Tex.1995). Appellees' petition alleges appellant manufactured an unreasonably dangerous product and caused it to enter the market place where it was "used or installed in or applied to the Plant Facilities and worksites of all Plaintiffs." We find such an allegation constitutes a claim that appellant committed an act directed to the forum state where the product was produced and from which it was introduced into the stream of commerce. Furthermore, at the hearing on the special appearance motion, appellees' evidence, which is unchallenged on appeal, included excerpts from GRC's sales catalogs listing the GRC plant in Troup, Texas, as a manufacturer of Litecast 30, a material with 23% asbestos content.

Based on the pleadings in the record and the evidence at the special appearance hearing, the trial court could have concluded that GRC purposefully availed itself of the privileges and benefits of conducting business in Texas and that at least one of the appellees' causes of action arose from or was related to an activity in Texas. By such conduct, GRC purposely directed its activities at Texas and, as a result, could foresee being haled into court here. *See generally CMMC v. Salinas,* 929 S.W.2d 435, 439 (Tex.1996); *Happy Indus. Corp. v. American Specialties,* Inc., 983 S.W.2d 844, 848–49 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.). Thus, there was sufficient evidence for the trial court to have concluded there were "minimum contacts" between GRC and Texas such that the due process requirements of the United States Constitution and the requirements of the Texas long-arm statute were met. Issues one, two, and three are overruled.[4]

*Fair Play and Substantial Justice*

In issue four, GRC contends Texas'exercise of personal jurisdiction over GRC offends traditional notions of fair play and substantial justice. The Texas Supreme Court has stated that only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the non-resident defendant has purposefully established minimum contacts with the forum state. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L. C.,* 815 S.W.2d 223, 231 (Tex.1991).

> Applying the concept of fair play and substantial justice requires consideration of the following: "(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."

4. Since we find the trial court had specific jurisdiction over the dispute, we need not consider whether GRC had sufficient minimum contacts with Texas under a general jurisdiction analysis.

*E.I. DuPont De Nemours & Co. v. Bailey,* 986 S.W.2d 82, 83 (Tex.App.—Beaumont 1999, no pet. h.) (quoting *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 232)..

### Burden on Defendant

GRC maintains it is not a resident of Texas because it sold substantially all of its operations in Texas to A.P. Green Industries in 1994. However, prior to that date, the evidence reveals GRC's contacts within the state of Texas were neither "random" nor "fortuitous," but, instead, were purposefully directed at the state. Indeed, that GRC did business in Texas for over fifty years and had a plant manufacturing asbestos-containing products in Texas represents a level and duration of activity in Texas that leads us to conclude GRC should expect to be called to our courts. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 359 (Tex.1990). GRC has not demonstrated in the record that requiring it to submit its dispute with the Alabama appellees to a court in Texas is any more burdensome to GRC, a Pennsylvania corporation, than, for example, requiring it to submit the dispute to an Alabama court. It is GRC's burden to show the burdensome nature of jurisdiction in Texas and not the burden of appellees to show the contrary.

### Forum State's Interest in Adjudicating the Dispute

It is undisputed that GRC had a plant in Troup, Texas, that manufactured an asbestos-containing material. Appellees have alleged such products entered the stream of commerce and ultimately caused their injuries. Certainly, Texas has a manifest interest in adjudicating the dispute and protecting not only its own residents but also non-residents exposed to products manufactured in Texas and alleged to be unreasonably dangerous. The interest of Texas is not a minimal one. *See Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 229 (State's regulatory interests in such areas as toxic waste, insurance, and securities are an important consideration in deciding whether the exercise of jurisdiction is reasonable.).

### Plaintiffs' Interest in Convenient and Effective Relief

Because appellees chose a Texas forum, it is obvious they have concluded this forum offers the most convenient and effective relief. Like the first two, this factor weighs in favor of Texas. As between Alabama, Texas, Pennsylvania, or some other jurisdiction, we see no overriding interest of one state over the other in its desire or ability to provide the most efficient resolution of controversies, and appellant directs us to none.

### Interstate Judicial System's Interest in Most Efficient Resolution

GRC also claims the interstate's judicial system's interest in obtaining the most efficient resolution demands that Texas not assert jurisdiction over it. Although GRC suggests on appeal that appellees filed suit in Texas because of a favorable procedural rule, it gives no basis for its supposition. According to GRC, Texas has no legitimate connection to the case, and, because of that deficiency, such concepts as "national unity" and a "healthy comity" among the states are not well-served if a Texas court is found to have jurisdiction. The flaw in GRC's analysis under this factor is its failure to recognize that Texas, having been the site of production of asbestos-containing materials, does have a legitimate connection to the case, and that connection is not automatically abrogated by the sale of a business and departure from the state. GRC has not shown this factor weighs against Texas.

### States' Interests in Furthering Fundamental Substantive Social Policies

As to the final factor, there is no evidence that other states' interest in furthering the social policies implicated in this case is any greater than that of Texas.

Thus, the fifth factor, like the other four, weighs in favor of Texas.

In light of the factors considered above, we find there is sufficient evidence for the trial court to conclude that the traditional notions of fair play and substantial justice would not be offended by the assumption of jurisdiction over GRC. The fourth issue is overruled. The trial court's order overruling GRC's special appearance motion is affirmed.

AFFIRMED.