The STATE OF RIO DE JANEIRO OF
The FEDERATIVE REPUBLIC
OF BRAZIL, Appellant,

v.

PHILIP MORRIS INCORPORATED,
B.A.T. Industries, P.L.C., Brown &
Williamson Tobacco Corporation, R.J.
Reynolds Tobacco Company, and Lor-
illard Tobacco Company, Appellees.

No. 09–03–059 CV.

Court of Appeals of Texas,
Beaumont.

Submitted on May 13, 2004.

Decided Aug. 12, 2004.

Susan Hays, Charles S. Siegel, Waters & Kraus, LLP, Dallas, for appellant.

H. Lee Godfrey, Susman Godfrey, LLP, Steven R. Selsberg, Shook, Hardy & Ba-

con, LLP, Paul E. Stallings, Vinson & Elkins, LLP, Houston, Catherine L. Bjorck, Jones Day, Dallas, Tanner T. Hunt, Jr., Wells, Payton, Greenberg & Hunt, LLP, Beaumont, Joseph M. McLaughlin, Simpson Thacher & Bartlett, LLP, New York, NY, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Rio de Janeiro of the Federative Republic of Brazil filed this lawsuit in the district court of Angelina County, Texas, against various nonresident defendants in an effort to recoup billions of dollars expended on healthcare because of smoking-related illnesses. The trial court found it did not have jurisdiction over the defendants and granted the special appearance motions of Philip Morris, Inc., R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, B.A.T. Industries, p.l.c., and Brown & Williamson Tobacco Corporation. Rio appealed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014 (Vernon Supp.2004). We affirm the trial court's order.

PERSONAL JURISDICTION

■ Texas courts may exercise personal jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes jurisdiction and the exercise of jurisdiction is consistent with due process. *See American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002); *see* Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041–.044 (Vernon 1997), § 17.045 (Vernon Supp.2004). The broad language of the Texas statute permits an expansive jurisdictional reach, limited only by the requirements of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355,

357 (Tex.1990). If a nonresident defendant has "minimum contacts" with Texas, and maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice," jurisdiction is proper under the due process clause. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *American Type Culture Collection*, 83 S.W.3d at 806.

■ Minimum contacts may support either specific jurisdiction or general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex. 2002). General jurisdiction is present when a defendant's contacts in a forum are continuous and systematic; the forum may exercise personal jurisdiction over the defendant even if the cause of action does not arise from or relate to activities conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. Specific jurisdiction is present if the defendant's liability arises from or is related to an activity conducted within the forum. *Id.* To satisfy due process, under either general or specific jurisdiction the exercise of jurisdiction must not be unreasonable; that is, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228–33 (Tex.1991).

## STANDARD OF REVIEW

■ Whether a court has jurisdiction over a defendant is a question of law subject to *de novo* review. *American Type Culture Collection*, 83 S.W.3d at 805–06. The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the long-arm statute's provisions, and the defendant must negate all jurisdictional bases. *BMC Software*, 83 S.W.3d at 793. The reviewing court determines the special appearance on the basis of the pleadings and the evidence presented to the trial court.[1] *Allianz Risk Transfer (Bermuda) Ltd. v. S.J. Camp & Co.*, 117 S.W.3d 92, 95 (Tex. App.-Tyler 2003, no pet.).

## FAIR PLAY AND SUBSTANTIAL JUSTICE

■ Rio's first issue addresses jurisdiction over the four manufacturing defendants: Philip Morris Incorporated, Brown and Williamson Tobacco Corporation, R.J. Reynolds Tobacco Company, and Lorillard Tobacco Company. Rio says these defendants' contacts with Texas give rise to general jurisdiction. "General jurisdiction is premised on the notion of consent." *American Type Culture Collection*, 83 S.W.3d at 808. The notion is, by invoking the benefits and protection of Texas law, a nonresident defendant consents to being sued in Texas. *Id.*

■ The four defendants stipulated to continuous and systematic contacts with Texas. Rio stipulated it was not claiming specific jurisdiction. The parties' stipulations narrow the issue to whether the exercise of jurisdiction over the defendants would comport with traditional notions of fair play and substantial justice.[2] The

1. Frequently, the trial court must resolve questions of fact before deciding the jurisdictional question. *BMC Software*, 83 S.W.3d at 794.

2. By footnote in their brief, PMI, RJR, B & W, and LTC say that continuous and systematic contacts do not necessarily establish general jurisdiction. Defendants say they really did not stipulate that their Texas contacts satisfy the threshold question of general jurisdiction. They say general jurisdiction is available only when the continuous corporate operation within a state is thought so substantial and of

Texas Supreme Court has outlined the following factors to be considered in deciding the "fair play and substantial justice" question:

(1) the burden on the defendants;

(2) the interests of the forum state in adjudicating the dispute, including the State's regulatory interest;

(3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies;

(5) the shared interest of the several states in furthering fundamental substantive social policies;

(6) in an international dispute, the unique burdens placed upon the defendant which must defend itself in a foreign legal system; and

(7) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies.

*Guardian Royal*, 815 S.W.2d at 228–30; *Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 440 (Tex.App.-Dallas 2004, pet. filed); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). "[I]t is incumbent upon the defendant to present a 'compelling case that the presence of

some [other] consideration[s] would render jurisdiction unreasonable.'" *Guardian Royal*, 815 S.W.2d at 231 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (alteration in original)). The fairness issues outlined in *Asahi* and *Guardian Royal* are to be evaluated in light of the minimum contacts otherwise shown to exist. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. Rio contends the first five factors listed in *Guardian Royal* support an exercise of jurisdiction over this claim.[3]

### THE BURDEN ON DEFENDANTS

■ Rio says litigating in Texas imposes a minimal burden on the defendants. The defendants say the discovery process, much of which will occur in Brazil, is unduly burdensome. They claim they will not be able to obtain adequate discovery there to defend this lawsuit. Defendants also say maintaining the lawsuit in Texas would be significantly more burdensome than in other states: none of the manufacturing defendants is headquartered or incorporated in Texas; none has more than a sales support presence in Texas; none of the relevant personnel are alleged to have ever been located in Texas; and no relevant activity is alleged to have occurred in Texas.

■ The difficulties of obtaining discovery in Brazil will be similar no matter

---

such a nature as to justify suit against the corporation on causes of action arising from dealings entirely distinct from those activities within the state. A "minimum contacts" analysis includes a qualitative as well as a quantitative aspect. Because the parties have briefed only the "fair play and substantial justice" requirement, and the requirement is dispositive here, we address only that issue.

**3.** Rio says factor six has no relevance and factor seven has "little relevance." Rio does say denial of jurisdiction "might" damage foreign relations but offers no explanation of what that damage would be. We agree factor

six has no relevance to this case. In the absence of an explanation from Rio of possible "adverse foreign-relations consequences," we limit our analysis to the first five factors. We consider the international nature of the litigation, and Rio's status as a state government of Brazil, under those factors. We are not persuaded by Rio's suggestion, in a footnote citing *Pfizer, Inc. v. India*, 434 U.S. 308, 318–19, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978), that declining to exercise jurisdiction under the circumstances here somehow would indicate a "want of comity and friendly feeling."

where in this country plaintiff brings the lawsuit. The defendants are not all incorporated in the same state. All the defendants are authorized to do business in Texas and have registered agents in Texas. Distance alone is insufficient to defeat jurisdiction. Modern transportation and communication make it less burdensome for a party to defend itself in a state where it does business. *See Boissiere v. Nova Capital, LLC,* 106 S.W.3d 897, 906 (Tex. App.-Dallas 2003, no pet.). Rio says Defendants sell over 28 billion cigarettes in Texas each year, a considerable amount of business activity and an amount the defendants do not dispute. The defendants' contacts with Texas lessen the burden of defending the lawsuit. *See Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707, 726 (Tex.App.-Austin 2000, pet. dism'd w.o.j.). The burden on defendants of litigating this case in Texas does not by itself preclude the exercise of jurisdiction.

### INTERESTS OF THE FORUM STATE

■ Rio argues the interests of Texas in adjudicating the dispute are as good as that of any other forum. The dispute is international. Relying on *Daimler–Benz Aktiengesellschaft,* 21 S.W.3d at 726, Rio says the federal government's foreign policy interests are not hindered when individual states ensure that large international companies redress wrongs the companies have caused around the world. Rio points out the torts alleged in this lawsuit are the same as those litigated in *The State of Texas v. The American Tobacco Co.,* 14 F.Supp.2d 956 (E.D.Texas 1997). However, Texas was a party to that litigation and the damages occurred in Texas. Neither Texas nor its residents are seeking redress of any wrong in this case.

The defendants argue Rio's claim has no effect on Texas residents. The parties are not residents of Texas. The conduct from which the claims arise did not take place in Texas. The products were not manufactured in Texas. No Texas property interest is at stake. They say Texas has no greater interest than any other state in providing a process for the recovery of Rio's damages.

We agree Texas does not appear to have an interest in adjudicating this specific dispute, a dispute involving tortious conduct and damages occurring outside the borders of Texas and unrelated to defendants' business in Texas. *See generally Guardian Royal,* 815 S.W.2d at 233; *Allianz Risk Transfer (Bermuda) Ltd.,* 117 S.W.3d at 97; *James v. Illinois Cent. R.R. Co.,* 965 S.W.2d 594, 599 (Tex.App.-Houston [1st Dist.] 1998, no pet.).

### RIO'S INTEREST IN OBTAINING CONVENIENT AND EFFECTIVE RELIEF

■ Rio says its interest in obtaining convenient and effective relief weighs in favor of litigating in Texas. Relying on defendants' expert's affidavit, Rio says the case, if tried in Brazil, would be subject to an inefficient, corrupt, and delay-ridden system in a state of crisis and chaos. No party to this case disputes the difficulties inherent in trying the case in Brazil. But the disadvantages of a foreign judicial system, coupled with the decision by some defendants to not challenge jurisdiction in Texas, does not mean the most convenient and effective relief is to be found in Texas. *See generally Kinney Sys., Inc. v. Continental Ins. Co.,* 674 So.2d 86, 91 n. 4 (Fla.1996) *(forum non conveniens* context) (citing *Islamic Republic of Iran v. Pahlavi,* 62 N.Y.2d 474, 478, 478 N.Y.S.2d 597, 467 N.E.2d 245 (1984)). Other states— where the companies are incorporated, headquartered, or have a manufacturing or research facility—offer convenient and effective relief.

## Interstate Judicial System's Interest In Obtaining The Most Efficient Resolution

 Rio argues that if the trial court's order is upheld, Rio will be forced to litigate in two forums—one in Texas, because three of the defendants have not contested jurisdiction in Texas, and one in a second forum, where jurisdiction may be obtained over the remaining defendants. Rio offers no explanation, case law, or statute to support its contention that jurisdiction cannot be obtained elsewhere over the three defendants not contesting Texas jurisdiction. The torts alleged by Rio occurred in places other than Texas and involved residents of either Brazil or other states of the United States. As between Texas and the states in which the defendants' conduct occurred, or where the defendants are incorporated or headquartered, we see no greater ability in Texas to provide an efficient resolution of the controversies. *See generally Allianz*, 117 S.W.3d at 97; *John Doe I v. Roman Catholic Archdiocese of St. Louis*, 109 S.W.3d 928, 931 (Tex.App.-Dallas 2003, no pet.) (Judicial efficiency would be served by litigating this dispute in the state in which most parties reside, most witnesses are likely to reside, and the alleged torts occurred.).

Rio also argues that because significant pretrial activity has occurred in Texas, Texas is a more efficient forum. But the pretrial activity involved the discovery associated with the special appearance motions and the hearing on those motions. Based on this record, we do not find the interstate system's interest in obtaining the most efficient resolution of the case is served by litigating these claims in Texas.

## Shared Interests Of States In Furthering Substantive Social Policies

 Rio says that where there is no other state ("except arguably the defendants' home states") with a superior interest to Texas, jurisdiction should be exercised by Texas. A Texas court could determine and apply the proper substantive law to this dispute. But the states where the defendants are incorporated, have their principal places of business, or have manufacturing or research facilities have a direct interest in any substantive law associated with this lawsuit. Defendants use other states as home in the conduct of their business, and those states have a strong interest in governing the conduct of their residents.

Considering all the *Guardian Royal* factors appropriate here, we conclude a Texas court's exercise of jurisdiction over these defendants in this dispute would be an overreach of its authority.

## B.A.T. Industries And *Res Judicata*

 Rio also argues the trial court erred in failing to find personal jurisdiction over B.A.T. Industries, p.l.c. Rio pleaded jurisdiction over BAT through BAT's dominating, alter ego, and agency relationship with its subsidiary B & W. BAT's special appearance motion contended (a) it had no minimum contacts with Texas and (b) any exercise of jurisdiction over it would not comport with fair play and substantial justice. Assuming without deciding that BAT has minimum contacts with Texas, we conclude the fair play and substantial justice analysis we have conducted applies equally to BAT.

 Rio says a federal court has decided BAT is subject to the jurisdiction of courts in Texas, and under *res judicata* principles we are bound by that decision. *See Cole v. The Tobacco Inst.*, 47 F.Supp.2d 812 (E.D.Tex.1999). The plaintiffs in *Cole* brought suit against tobacco manufacturers "for themselves and purportedly for all other persons in Texas who

are similarly situated; i.e. cigarette smokers, past and present, or their survivors and next of kin." *See id.* at 813. The court found a significant number of the injured were citizens of Texas. *Id.* at 818. We do not see *Cole* as controlling our decision. The court in *Cole* found specific jurisdiction over BAT; the finding of general jurisdiction was not essential to the case. *See id.* at 817. But more to the point, because we decide this case under the fair play and substantial justice factors set forth by the Texas Supreme Court in *Guardian Royal,* the *Cole* court's determination of minimum contacts does not answer the question presented here. General jurisdiction is sometimes described as dispute-blind, because the contacts with the forum state are so significant the non-resident defendant may be treated like a resident for all purposes in any litigation. *See Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 339–41 (5th Cir.1999)(General jurisdiction focus is not on the cause of action, but on the presence or absence of continuous and systematic contacts.). Nevertheless, under the fair play and substantial justice analysis, a court cannot fully consider the interests of the forum state, the parties involved, and other states without addressing the specific nature of the litigation. Even if minimum contacts exist, the exercise of jurisdiction over a nonresident defendant in a dispute may be unreasonable and so violate due process. *See Guardian Royal,* 815 S.W.2d at 228–233.

CONCLUSION

Reviewing the *Guardian Royal* factors, we hold traditional notions of fair play and

substantial justice would be offended by the exercise of jurisdiction in Texas over PMI, B & W, RJR, Lorillard and BAT under the circumstances involved in this dispute. Because the exercise of jurisdiction over these defendants in this case would be unreasonable, we hold the trial court did not err in granting the special appearance motions.

Issues one and two are overruled. The district court's order is affirmed.

AFFIRMED.

DON BURGESS, Justice, concurring and dissenting.

I concur in the affirmation as to B.A.T. However, unlike the majority, I would decide the issue on the basis of no minimum contacts and not reach the "traditional notions of fair play and substantial justice" issue.

I respectfully dissent to the other portion of the opinion. The majority correctly limits their analysis to the first five Guardian Royal factors [1] and so shall I.

The Burden on Defendants [2]

As to the first factor, they conclude: "The burden on defendants of litigating this case in Texas does not by itself preclude the exercise of jurisdiction." This implies there *is* a burden and I do not accept that implication. I do, however, agree with their conclusion regarding factor one.

1. These are (1) "the burden on the defendant," (2) the interests of the forum state in adjudicating the dispute, (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared

interest of the several States in furthering fundamental substantive social policies." *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex.1991).

2. I will use the same subtitles as the majority.

### Interests of the Forum State

Regarding factor two, the majority states: "We agree Texas does not appear to have an interest in adjudicating this specific dispute ..." Obviously, I disagree. To borrow a phrase from appellants, "this case has no center of gravity." PMI was incorporated in Virginia and has its principal place of business in New York. RJR was incorporated in New Jersey and has its principal place of business in North Carolina. B & W was incorporated in Delaware and has its principal place of business in Kentucky. Lorillard was incorporated in Delaware and has its principal place of business in North Carolina. There is no single state that has a greater interest than any other, including Texas.[3]

### Rio's Interest in Obtaining Convenient and Effective Relief

The majority concludes: "But the disadvantages of a foreign judicial system, coupled with the decision by some defendants to not challenge jurisdiction in Texas, does not mean the most convenient and effective relief is to be found in Texas. [citations omitted.] Other states—where the companies are incorporated, headquartered, or have a manufacturing or research facility—offer convenient and effective relief." The majority does not even analyze this factor utilizing the subtitle. The analysis under this factor is the plaintiff's—Rio's interest in obtaining convenient and effective relief. This court stated in *E.I. DuPont De Nemours & Co. v. Bailey*, 986 S.W.2d 82, 84–85 (Tex.App.-Beaumont 1999, pet dism'd w.o.j):

> The plaintiffs chose Texas as their forum; therefore, we can presume they do not find it inconvenient or ineffective.
>
> DuPont claims discovery will be "more convenient" for the plaintiffs if

trial is had in Alabama. The issue is not one of more or less convenience—that is a *forum non conveniens* argument over which we do not have jurisdiction. Also, we would not presume to decide for the plaintiffs what is convenient for them.

This is the correct focus, the convenience to the plaintiff, not general convenience. As in *Bailey*, this court should not presume to decide what is convenient for the plaintiffs.

### Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution

Here the majority simply concludes: "Based on this record, we do not find the interstate system's interest in obtaining the most efficient resolution of the case is served by litigating these claims in Texas." Again, I disagree.

Three defendants, Joseph Dobbs, Brooke Groups Ltd., and Liggett Group, Inc. did not file a special appearance in the trial court; consequently, the case against these defendants will proceed in Texas. Again, as explained in *Bailey*,

> The interstate judicial system's interest in obtaining the most efficient resolution, the fourth factor, is clearly best served in Texas. There are other defendants, properly under Texas jurisdiction, included in the suit. It is surely most efficient to conduct only one trial where possible. Texas is a forum where the claims against all the defendants can properly be brought; conducting separate lawsuits would instead run counter to judicial economy and would not further the interest of the interstate judicial system in obtaining the most efficient resolution of controversies.

986 S.W.2d at 85.

I see no reason to retreat from our prior reasoning.

---

**3.** It is common knowledge the State of Texas was a leader in litigation against major tobacco manufacturers and achieved a significant settlement with those manufacturers.

**506**

Shared Interest of States in Furthering Substantial Social Policies

The majority analyzes this factor with four sentences. The first two state Rio's position while the last two:

> But the states where the defendants are incorporated, have their principal places of business, or have manufacturing or research facilities have a direct interest in any substantive law associated with this lawsuit. Defendants use other states as home in the conduct of their business and those states have a strong interest in governing the conduct of their residents.

simply state the obvious. Nowhere in their analysis does the majority even identify the fundamental substantial social policies implicated in this case, much less show how any other states' interest in furthering these social policies is any greater than that of Texas. *See General Refractories Co. v. Martin,* 8 S.W.3d 818, 823–824 (Tex. App.-Beaumont 2000, pet denied).

### Conclusion

Our Supreme Court said it best in *Guardian Royal:*

> Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *See Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185; *see also Schlobohm,* 784 S.W.2d at 358 ("it has become less likely that the exercise of jurisdiction will fail a fair play analysis.") The stringent standard to be applied is set forth in *Burger King:*

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations

would render jurisdiction unreasonable. . . .

815 S.W.2d at 231.

This court followed this analysis in *Bailey,* 986 S.W.2d at 83–84, and should follow it in this case. This is not the rare case required by *Guardian Royal* nor did the defendants make a compelling case as required by *Burger King.* This court should reverse the trial court's granting of the special appearances of the PMI, B & W, RJR and Lorillard's defendants. Because they do not, I respectfully dissent.