# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-17-00080-CV
_____

### SCOTTY WALES, ADAM STOUT AND CAS ENTERPRISE-VENTURE, VI, LLC, Appellants

### V.

### PAUL RUPPERT, INNOVATIVE RESOURCES ENTERPRISES, LLC AND INNOVATIVE RESOURCES, INC., Appellees

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D160237-C**

## MEMORANDUM OPINION

Appellants Scotty Wales, Adam Stout, and CAS Enterprise-Venture, VI, LLC filed this interlocutory appeal from the trial court's order granting the special appearance of Appellees, Paul Ruppert, Innovative Resources Enterprises, LLC, and Innovative Resources, Inc. and dismissing the claims against them. We affirm.

1

# I. Factual Background

Paul Ruppert is a Louisiana oil operator and economic development consultant. Ruppert's two companies, Innovative Resources, Inc. and Innovative Resources Enterprises, LLC[1] were both formed to do business in Louisiana regarding oil and economic development. Garold Thibodeaux is a participant in some of the Ruppert Defendants' oil wells. Scotty Wales, Adam Stout, and CAS Enterprise-Venture, VI, LLC[2] each claim to have invested in one or more wells on Ruppert family land in Acadia Parish, Louisiana.

Although consistent in some respects, the parties present largely conflicting accounts of the operative facts underlying the suit. Wales alleges that Thibodeaux approached him in 2007, seeking to serve as a financial advisor. Wales asserts that Thibodeaux then approached him in 2008 regarding certain investments with "Thibodeaux and his partner, [Ruppert.]" Wales further alleged that the Ruppert Defendants "had a business or partnership relationship with [Thibodeaux], to solicit investment opportunities and sell working interests in various oil wells and saltwater

---

[1] Except when helpful to distinguish the acts of Ruppert as an individual, we generally refer to Ruppert and his two companies collectively as the "Ruppert Defendants."

[2] Except when helpful to distinguish the acts of any of the appellants individually, we generally refer to Wales, Stout, and CAS Enterprise Venture, VI, LLC collectively as "Wales."

wells" and that Thibodeaux and the Ruppert Defendants met with Wales in Orange, Texas, and "jointly marketed to [him] the investment of re-entering at least two (2) wells . . . for the purpose of reestablishing paying quantities." Wales entered into a Participation Agreement in September, 2009, which required Wales to front costs for re-entering wells in exchange for thirty percent of the royalty. Wales advanced the estimated costs for the first well, Well No. 1, which worked as anticipated and resulted in Wales's receipt of substantial royalty payments. Wales contends that in 2012, he "was asked to and did advance" the costs to re-work another oil well, Well No. 2. He further asserts that, around the same time, the Ruppert Defendants and Thibodeaux approached him with an opportunity to invest in a third well, this one being a saltwater well, and that he advanced money for that well also.

In the course of these dealings, Wales sold a portion of his participation interest in Well No. 1 to Adam Stout, as an assignee. Wales contends that Stout also purchased an assigned interest in Well No. 2 after being approached by Thibodeaux. Wales likewise provided the production information he had received about the wells to Craig Stickfort, who also purchased a portion of Wales's interest in Wells No. 1 and No. 2.[3]

---

[3] Wales's Original Petition alleges that Stickfort purchased a portion of Wales's interest in the wells; however, the documents produced in the trial court

Well No. 1 went offline in 2015 and required substantial repair. It was determined that Well No. 2 was not viable, and no income was earned on the saltwater well. On August 5, 2016, Wales filed suit against Thibodeaux and the Ruppert Defendants for various causes of action relating to the wells.

The Ruppert Defendants, through their pleadings and testimony from Ruppert and Thibodeaux, provide a significantly different account of the relationship among the parties and how the events underlying the suit unfolded. Ruppert asserts that Thibodeaux was a long-time personal friend and a participant in some of Ruppert's oil wells in Louisiana, but he was never his employee or agent, and Ruppert never directed Thibodeaux to solicit or conduct any business for him in Texas.

Thibodeaux testified that he and Wales were friends before any of these events and that he also provided Wales with financial advice. He testified that he and Wales were having a friendly lunch one day in Vidor, Texas, when Wales mentioned that he needed to make more money and asked if Thibodeaux knew of any business opportunities. Thibodeaux replied by disclosing his own intent to participate in a business owned by a friend of his who re-enters abandoned wells in an effort to bring them back into production. Thibodeaux testified that Wales expressed interest in

indicate that the legal purchaser was CAS Enterprise Venture VI, LLC, with Craig Stickfort executing the documents on the entity's behalf.

4

becoming involved himself and requested that Thibodeaux contact Ruppert in order for Wales to discuss the business further with him and be able to participate in the well. Thibodeaux testified that Wales knew Thibodeaux's relationship with Ruppert was one of friendship and that he never held himself out as a representative of the Ruppert Defendants. Thibodeaux also testified that he made clear to Wales that his mention of the oil wells as a business opportunity was separate from his financial investment advice. Similarly, Ruppert testified that Thibodeaux had no authority to enroll others in any well on Ruppert's behalf, and Thibodeaux received no payment or commission regarding the wells.

The Ruppert Defendants further allege that Ruppert met Stout only once, when Stout visited the wells in Louisiana with Wales and Thibodeaux, and that it was Wales who solicited Stout and provided Stout with production reports. Ruppert testified that he never met Stickfort at all, although he did speak to Stickfort by telephone. Ruppert testified that he never expressly authorized Wales to transfer any interest in his Participation Agreement, and the terms of the agreement do not permit such a transfer. Ruppert acknowledged that he accepted expense payments from Stout because it ultimately did not matter to him who made payments; however, he maintains that he never had any contract with Stickfort or Stout.

The Ruppert Defendants allege that Wales ultimately refused to pay certain expenses owed under the Participation Agreement, and that it was Wales's failure to advance the required costs that adversely impacted the wells' ability to operate.

After Wales filed suit in a district court in Texas, the Ruppert Defendants filed a joint Special Appearance, arguing they did not have sufficient minimum contacts with the state to justify a Texas court's assertion of jurisdiction over them. Following an evidentiary hearing, the court sustained the special appearance and dismissed the suit against the Ruppert Defendants for lack of personal jurisdiction. Wales then filed this interlocutory appeal, asserting that the trial court erred in granting the special appearance. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2016).

## II. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review *de novo*. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The burden of proof in a jurisdictional challenge is a shifting one:

> [T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff.

6

*Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) (internal citations omitted). In resolving a defendant's special appearance, the trial court considers the pleadings, any stipulations between the parties, any affidavits and attachments filed by the parties, the results of any discovery conducted, and any oral testimony before the court. Tex. R. Civ. P. 120a(3).

In making its jurisdictional determination, the trial court may also be required to resolve questions of jurisdictional fact. *BMC Software*, 83 S.W.3d at 794. We review the trial court's resolution of underlying factual disputes under a legal and factual sufficiency standard, while the legal conclusions drawn therefrom are subject to *de novo* review. *Id.* When, as in this case, a trial court does not issue explicit findings of fact and conclusions of law, we infer all factual findings necessary to support the trial court's jurisdictional determination if the record contains evidence supporting such a determination. *See GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 870 (Tex. App.—Austin 2008, no pet.). "However, a trial court's implied findings are not conclusive, and if the record on appeal contains a reporter's record and clerk's record, the appellant may use the record to argue that the evidence is insufficient to support implied findings that are relevant to the appeal." *Am. Express Centurion Bank v. Haryanto*, 491 S.W.3d 337, 342 (Tex. App.—Beaumont 2016, no pet.). We review a trial court's factual findings under the same legal and factual sufficiency

standards applicable to a jury's findings. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

### III. Waiver by Live Testimony

In his first issue on appeal, Wales argues that the Ruppert Defendants waived their objection to personal jurisdiction when, prior to securing a ruling on their special appearance, Ruppert "appeared in person and testified in support of a fellow defendant's motion to transfer venue[.]" Wales asserts that Ruppert's testimony "in support of Thibodeaux's motion to transfer venue" violated the due-order-of-hearing rule that requires any motion challenging jurisdiction to be heard and determined before a motion to transfer venue or any other plea or pleading. *See* Tex. R. Civ. P. 120a(2). Although Wales correctly states the law regarding the due-order-of-hearing requirement, his argument mischaracterizes the proceedings in the trial court. The record clearly shows that the parties were arguing the Ruppert Defendants' special appearance, not Thibodeaux's motion to transfer venue, at the time that Ruppert provided testimony. Wales's counsel effectively acknowledged the focus of the hearing by informing the trial court in response to Ruppert's argument that "[t]he issue here is what Mr. Ruppert and his businesses do here in Texas that warrants them being brought into the state of Texas." At the conclusion of Ruppert's live testimony, Wales's counsel advised the court that he had no further questions "[o]n

the issue of the special appearance[.]" Finally, during one portion of Thibodeaux's testimony at the hearing, the court interrupted and redirected Wales's counsel's cross-examination as he began to veer into evidence regarding other issues, noting "I think we're getting into some areas, though, that's getting away from . . . the special appearance." After the evidence was concluded, the court granted the special appearance. It was only after the special appearance was granted that Thibodeaux's motion to transfer venue was substantively addressed, with the following exchange:

> [Defense Counsel]: The motion to transfer venue, Your Honor, do we need to bring that up or that's --
>
> [Trial Court]: No.
>
> [Defense Counsel]: Okay.
>
> [Trial Court]: I don't see any sense in entertaining that at this point.
> . . .
>
> [Plaintiff's Counsel]: I'm sorry. Before we go off the record because I'm not clear, on the motion to transfer venue, is the Court -- the Court is not ruling on those?
>
> [Trial Court]: I'm not going to -- no.
>
> [Plaintiff's Counsel]: I'm just --
>
> [Trial Court]: I'm -- okay. I'm going to deny --
>
> [Plaintiff's Counsel]: You're overruling --
>
> [Trial Court]: I'm going to deny the motion to transfer venue.

Accordingly, on this record, we find that Ruppert's testimony in support of his own special appearance did not constitute a general appearance and did not violate the due-order-of-hearing requirement. *See* Tex. R. Civ. P. 120a(2), (3). We overrule Wales's first issue.

### IV. Personal Jurisdiction

In his second issue, Wales argues that the district court erred in sustaining the Ruppert Defendants' special appearance because "[t]he evidentiary record demonstrates that Appellees availed themselves to Texas' jurisdiction."

A Texas court may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Texas's long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Relevant to this case, Texas's long-arm statute provides that a nonresident does business in this state if he: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; or (2) commits a tort in whole or in part in this state. *See* Tex. Civ. Prac. & Rem. Code Ann § 17.042(1), (2) (West 2015). The Texas Supreme

10

Court has interpreted the statute's broad "doing business" language to reach "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977), *cert. denied,* 434 U.S. 1063 (1978)). "Thus, the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac*, 221 S.W.3d at 575.

Federal constitutional due-process limitations for the assertion of personal jurisdiction over a nonresident require first that the nonresident have established minimum contacts with the forum state, and also that the exercise of such jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795. Minimum contacts are deemed sufficient when the nonresident "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Moki Mac*, 221 S.W.3d at 575 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In analyzing whether a nonresident has purposefully availed himself of the forum, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 575 (internal quotes and citations omitted).

A nonresident defendant's contacts may give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. "Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the [state]." *Id.* at 796. By contrast, general jurisdiction is established when a nonresident's contacts with the state are so "continuous and systematic" that personal jurisdiction is permissible regardless of whether his alleged liability arises from or in relation to his specific contacts. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 165 (Tex. 2007).

## V. Analysis

In their special appearance and supporting affidavits, the Ruppert Defendants asserted that they are not subject to personal jurisdiction in Texas because Ruppert is a life-long resident of Louisiana who has never lived, worked or held himself out as a businessman in Texas; both of Ruppert's companies were incorporated and have their principal place of business in Louisiana; and neither he nor either of his Louisiana corporations conducted, pursued, or directed business in the State of Texas.

## A. Specific Jurisdiction

In asserting that the trial court should exercise specific jurisdiction over the Ruppert Defendants, Wales relies almost exclusively on the actions and activities of Thibodeaux, arguing that Thibodeaux exercised apparent authority to act for the Ruppert Defendants.

For purposes of a jurisdictional inquiry, an agent's contacts with a forum state may be imputed to the nonresident principal. *Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 733 (Tex. App.—Houston [14th Dist.] 2008, no pet.). However, an agency relationship cannot be presumed; rather, it must be proven by the party asserting such a relationship exists. *Schultz v. Rural/Metro Corp. of New Mexico-Texas*, 956 S.W.2d 757, 760 (Tex. App.—Houston [14th Dist.] 1997, no pet.). The question of whether an agency relationship exists is one of fact unless the issue is undisputed or the evidence establishes the relationship as a matter of law. *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 210 (Tex. App.—Houston [1st Dist.] 1995, writ denied). In this case, Ruppert unequivocally disputed the existence of any agency relationship. Accordingly, in holding that the Ruppert Defendants were not subject to specific jurisdiction in Texas, we must infer that the trial court impliedly found that Thibodeaux was not acting as the Ruppert

13

Defendants' "Texas agent," as argued by Wales. *See BMC Software*, 83 S.W.3d at 795 (requiring appellate courts to infer all findings of jurisdictional facts necessary to support the trial court's ruling).

In addition to submitting affidavits to the trial court, Ruppert and Thibodeaux each testified at the special appearance hearing that there never existed any actual or apparent agency relationship between them and that neither ever made any representation of such authority to Wales or anyone else. Although this evidence is in direct conflict with Wales's assertions regarding Thibodeaux's representations, it is for the trial court to resolve such evidentiary conflicts. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex. 1986). Thus, viewing the evidence in the light most favorable to the court's ruling and indulging every reasonable inference in support of its implied finding, we conclude that there was legally sufficient evidence negating an agency relationship, and that the court's implied finding was not against the great weight and preponderance of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 826–27 (Tex. 2005) (describing the standards for legal and factual sufficiency on appellate review).

Our jurisdictional analysis must focus, then, only on the contacts that Ruppert himself had with Texas as a forum, disregarding Thibodeaux's actions and activities. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Hoagland v. Butcher*, 396 S.W.3d

14

182, 194 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("When there are multiple defendants, the contacts of each defendant must be analyzed individually."). Notably, of all of the "jurisdictional facts" Wales relies on in his appellate brief, the only activities that Ruppert is alleged to have engaged in personally were two or three meetings that occurred in Orange, Texas, for the parties to sign the Participation Agreement and to discuss the wells. Ruppert acknowledged that he came to Texas once to meet with Wales and sign the Participation Agreement, asserting that he did so at Wales's direct request and solely for Wales's convenience, as a professional courtesy. Ruppert asserts that the only other time he came to Texas was to meet with Wales's attorney after Wales had threatened to file suit. He also acknowledged communicating with Wales by e-mail and accepting monetary payments that originated in Texas, Kansas and Iowa at various times.

The fact that a nonresident defendant conducts business with a Texas resident and communicates with the resident in furtherance of that business is insufficient, without more, to confer specific jurisdiction. *See Bryan v. Gordon*, 384 S.W.3d 908, 916 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The fact that Appellees conducted business with . . . a Texas resident[] is insufficient alone to confer specific jurisdiction."); *Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] nonresident does not establish minimum

15

contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the contract."); *Weldon-Francke v. Fisher*, 237 S.W.3d 789, 796 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Moreover, in addition to sufficient minimum contacts, the imposition of specific jurisdiction also requires that the litigation result from alleged injuries that directly arise from or relate to the activities the nonresident has directed at the forum. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991); *see also Double Eagle Resorts, Inc. v. Mott*, 216 S.W.3d 890, 894 (Tex. App.—Beaumont 2007, no pet.) (holding that specific jurisdiction was not proper where plaintiff's claim arose from conduct that occurred in another state, not from the defendant's purposeful, direct mail solicitation of the plaintiff in Texas). For example, in *Moki Mac,* the Texas Supreme Court held that a defendant's promotional activities in Texas were "simply too attenuated to satisfy specific jurisdiction's due-process concerns" where the operative facts of the underlying case would focus almost entirely on activities that occurred in another state, and alleged misrepresentation claims would be considered only after, and in connection with, the analysis of those out-of-state activities. 221 S.W.3d at 586–88. Similarly, the wells at issue in this case were located and operated exclusively in Louisiana. All

16

records and information regarding the wells, their status, work needed, work performed, and associated costs derive from individuals, entities, facts and data that reside or exist in Louisiana. All witnesses to the operation and maintenance of the wells would be in Louisiana. Accordingly, the ultimate determination of whether the Ruppert Defendants mismanaged the wells or failed to pay appropriate royalties, or whether any alleged representations about the wells were actionably false will necessarily turn on consideration of events and operations occurring almost exclusively in Louisiana. Thus, as in *Moki Mac*, the cause of action cannot reasonably be said to "arise out of or relate to" Ruppert's limited contacts with Texas. *See* 221 S.W.3d at 586–88. Therefore, we find that the trial court did not err in refusing to find specific jurisdiction.

### B.     General Jurisdiction

Wales further argues that, even if all of Thibodeaux's actions are ignored, the Ruppert Defendants had systematic and continuous contact in Orange County, Texas, for purposes of general jurisdiction. Because general jurisdiction permits a court to exercise personal jurisdiction over a nonresident for claims not directly linked to the defendant's contacts with the state, a general jurisdiction inquiry requires "a 'more demanding minimum contacts analysis,' with a 'substantially higher' threshold[.]" *PHC–Minden*, 235 S.W.3d at 168 (quoting *CSR Ltd. v. Link*,

17

925 S.W.2d 591, 595 (Tex. 1996) and 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (2007)). Although there is no precise formulation for the amount of contacts necessary to establish general jurisdiction, it is clear that the requisite level is substantial. *Id.* at 167.

In support of his argument that general jurisdiction was proper, Wales asserts that Ruppert's actions in Texas included: (1) personally soliciting investments from Texas investors from Louisiana; (2) coming to Texas to visit with Wales about the business, provide hardcopies of information on Well No. 1, and execute the Participation Agreement; (3) receiving payments in Texas; (4) revisiting the Texas investors in Texas to update them on the status of their investments, provide expense reports, and solicit further investments in Well No. 2 and the salt water well; and (5) passing communications regarding expenses through a Texas resident. We note, however, that many of these alleged contacts were controverted by evidence presented by the Ruppert Defendants in the trial court, and as discussed herein, this court is required to imply all factual findings in favor of the trial court's judgment that are supported by the record. *BMC Software*, 83 S.W.3d at 794–95. Viewing the entire record in light of that framework, we find that there is sufficient evidence to support implied factual findings that (1) any contacts Ruppert personally had with Texas were primarily requested and arranged by other parties, (2) any such activities

were solely to accommodate Wales's desire to invest in Ruppert's business, the operations of which were conducted exclusively in Louisiana, and (3) the limited contacts Ruppert did have with Texas, as factually supported by the evidence, were minimal or fortuitous and not grounded on any effort or desire to invoke any benefit or protection of Texas law.[4] *See U–Anchor Advert.*, 553 S.W.2d at 763.

Moreover, the record contains no evidence that Ruppert ever had any contact with Texas outside of those specifically related to the facts underlying this dispute. *See State of Rio De Janeiro of Federative Republic of Brazil v. Philip Morris Inc.*, 143 S.W.3d 497, 504 (Tex. App.—Beaumont 2004, pet. denied) (noting that "[g]eneral jurisdiction is sometimes described as dispute-blind, because the contacts with the forum state are so significant the nonresident defendant may be treated like a resident for all purposes in any litigation."). Given the more demanding minimum contacts analysis than is required for specific jurisdiction, we find that Ruppert's limited, sporadic, and fortuitous contacts with this forum cannot be characterized as so "constant and pervasive" that Ruppert can fairly be said to be "at home" in Texas.

---

[4] We also note that, although Wales argues that the Participation Agreement "does not indicate that it is to be governed by anything other than Texas law[,]"it also does not indicate that it is to be governed by anything other than Louisiana law, as it contains no choice of law provision. All of the Assignment documents contained in the record, however, do contain provisions that they "will, in all respects, be subject to, construed and enforced in accordance with the laws of Louisiana . . . ."

*See Booth v. Kontomitras*, 485 S.W.3d 461, 479–80 (Tex. App.—Beaumont 2016, no pet.); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (holding that a State may exercise general jurisdiction only where a defendant's affiliations with the forum are so continuous and systematic as to render the defendant essentially "at home" there); *PHC–Minden*, 235 S.W.3d at 170 (holding that isolated trips to a foreign jurisdiction "fall short of the 'continuous and systematic contact' the Supreme Court requires" for general jurisdiction); *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995) (concluding that neither the defendant's attendance at a meeting in Texas nor its mailings to Texas members presented evidence of general jurisdiction); *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 908–10 (Tex. App.—Austin 2000, pet. denied) (holding that communicating with a Texas resident during performance of contract does not satisfy minimum contacts for jurisdictional purposes). Accordingly, we conclude that the trial court did not err in declining to exercise general jurisdiction over the Ruppert Defendants.

## VI. Conclusion

We conclude that Ruppert's live testimony in support of the Ruppert Defendants' special appearance did not violate the due-order-of-hearing requirement or otherwise waive their objection to personal jurisdiction. We further hold that there

is sufficient evidence to support the trial court's implied finding that Thibodeaux was not acting as an agent of the Ruppert Defendants, and that Thibodeaux's contacts cannot be imputed to the Ruppert Defendants for jurisdictional purposes. Finally, we conclude that the Ruppert Defendants' contacts with Texas are insufficient to support the trial court's exercise of personal jurisdiction over them. Accordingly, we affirm the trial court's judgment granting the special appearance of the Ruppert Defendants.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 10, 2017
Opinion Delivered February 8, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.