COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-178-CV

 

 

TRAVELJUNGLE                                                                  APPELLANT

 

 

                                                   V.

 

 

AMERICAN AIRLINES, INC.                                                      APPELLEE

 

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction








This is an accelerated
interlocutory appeal from the trial court=s order denying appellant TravelJungle=s special appearance.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 51.014(a)(7) (Vernon Supp. 2006). 
In one issue, TravelJungle challenges the trial court=s determination that it had sufficient minimum contacts with the State
of Texas that would enable Texas to assert personal jurisdiction over it.  Because TravelJungle did not meet its burden
of proof, under the standard of review articulated by the Texas Supreme Court,
to disprove all possible bases of jurisdiction, we affirm the trial court=s order.

Background Facts

TravelJungle operates a
website that gathers hotel, car rental, and airline flight schedules and fare
information in response to internet requests from consumers.  With regard to airline information,
TravelJungle uses special software to gather the flight and fare information
from airlines= websites
and from other travel websites, such as Expedia.com and Travelocity.com.  Once it obtains that information, it Aassimilates and sorts the data it obtains from airline and reservation
sites and presents it to the requestor.@  Users of TravelJungle=s website search it for flight information by first choosing a
departure and arrival city.  The website
then provides the user with several fares and schedules to choose from, which
the user can then select to make reservations through TravelJungle=s website.








TravelJungle is registered in
the United Kingdom and has its principal places of business in Germany and
Bulgaria.  Its servers and employees are
located in Germany and Bulgaria, and it has no employees in the U.S.  If a user of the website decides to book one
of the flights presented by TravelJungle in response to the user=s request, a TravelJungle representative in Bulgaria books the flight
with the organization that it got the information from via that organization=s website.          According to TravelJungle, between
February 2003 and June 2004, TravelJungle included appellee American Airlines,
Inc.=s website, AA.com, in its search for flight schedule and fare
information if American provided services between the departure and arrival
cities listed in a TravelJungle user=s search.  TravelJungle also
listed AA.com on its website as one of the sites it searched to provide this
information and displayed a copy of the American logo on its website.








In 2004, American sued
TravelJungle and several other similar website operators for breach of AA.com=s Use Agreement, which prohibits users from using the information on
the website for Acommercial@ purposes; tortious interference with American=s contracts with authorized internet distributors of American=s fare and scheduling data; tortious interference with prospective
business relations, i.e., consumers who could have booked flights directly on
AA.com;[1]
trespass of AA.com=s servers;
violation of the Texas computer crimes statute;[2]
civil conspiracy; common law trademark infringement; violation of the Texas
anti-dilution act;[3]
and misappropriation.  After learning
that American had sued it, TravelJungle discontinued accessing AA.com and took
American=s logo off its website.  It also
entered a special appearance challenging the trial court=s personal jurisdiction over it. 
The trial court denied the special appearance after an evidentiary
hearing but declined to file findings of fact and conclusions of law.

Issue on Appeal








In a single issue on appeal,
TravelJungle contends that the trial court abused its discretion by denying the
special appearance because it negated all possible bases of jurisdiction as a
matter of law.  American contends that
TravelJungle did not meet its burden of proof under the standard of review articulated
by the Texas Supreme Court.

Standard of Review

Whether a trial court has
personal jurisdiction over a defendant is a question of law.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002); SITQ, E.U., Inc. v. Reata Rests., Inc.,
111 S.W.3d 638, 644 (Tex. App.CFort Worth 2003, pet. denied). 
The plaintiff bears the initial burden of pleading sufficient
allegations to bring a nonresident defendant within the provisions of the long‑arm
statute.  BMC Software, 83 S.W.3d
at 793; Reata, 111 S.W.3d at 644. 
A defendant challenging a Texas court=s personal jurisdiction over it must negate all jurisdictional
bases.  BMC Software, 83 S.W.3d at
793; Reata, 111 S.W.3d at 644.  We
review all of the evidence in making this determination.  Reata, 111 S.W.3d at 645; Michel v.
Rocket Eng=g Corp., 45 S.W.3d 658, 667 (Tex. App.CFort Worth 2001, no pet.).








When, as here, a trial court
does not issue findings of fact and conclusions of law with its special
appearance ruling, we imply all facts necessary to support the judgment.  BMC Software, 83 S.W.3d at 794; Reata,
111 S.W.3d at 645.  Because here the
appellate record includes both the reporter=s and clerk=s records,
however, these implied findings are not conclusive.  BMC Software, 83 S.W.3d at 795; Reata,
111 S.W.3d at 645.  We may review the
trial court=s resolution
of disputed fact issues for legal and factual sufficiency under the same
standards of review that we apply in reviewing a jury=s or trial court=s findings
of fact at trial.  Michel, 45
S.W.3d at 668.

Personal Jurisdiction

A Texas
court may assert personal jurisdiction over a nonresident defendant only if the
requirements of due process under the Fourteenth Amendment and the Texas
long-arm statute are satisfied.  U.S. Const. amend. XIV, ' 1; Tex. Civ. Prac. & Rem.
Code Ann. '' 17.041B.045 (Vernon 1997 & Supp. 2006); Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 413B14, 104 S. Ct. 1868, 1871B72 (1984); CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996)
(orig. proceeding); Michel, 45 S.W.3d at 668.

Long-arm Statute








The Texas long‑arm
statute governs Texas courts= exercise of jurisdiction over nonresident defendants.  Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045; BMC
Software, 83 S.W.3d at 795; Reata, 111 S.W.3d at 645.  That statute permits Texas courts to exercise
jurisdiction over a nonresident defendant who Adoes business@ in
Texas.  Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042; BMC Software, 83 S.W.3d at 795; Reata, 111
S.W.3d at 645.  The statute lists some
activities that constitute Adoing business,@ including
the commission of a tort, in whole or in part. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 17.042; Reata,
111 S.W.3d at 645.  The list of activities
set forth in section 17.042 is not exclusive, however.  BMC Software, 83 S.W.3d at 795.

Section 17.042=s broad language extends Texas courts= personal jurisdiction only Aas far as the federal constitutional requirements of due process will
permit.@  Id. (quoting U‑Anchor
Adver., Inc., N.H. v. Burt, 553 S.W.2d 760, 762 (Tex.1977)); Reata,
111 S.W.3d at 645.  Therefore, in
determining whether a nonresident defendant has met its burden to negate all
bases of jurisdiction, we rely on precedent from the United States Supreme
Court and other federal courts, as well as our own state=s decisions.  BMC Software,
83 S.W.3d at 795.

Due Process








Due process is satisfied when
(1) the defendant has established minimum contacts with the forum state and (2)
the exercise of jurisdiction comports with traditional notions of fair play and
substantial justice.  Int=l Shoe Co. v. Washington, 326 U.S.
310, 316, 66 S. Ct. 154, 158 (1945); BMC Software, 83 S.W.3d at 795; Reata,
111 S.W.3d at 645.  Here, appellant
challenges only the first component of due process:  whether it established minimum contacts with
the State of Texas.

A nonresident defendant who
has Apurposefully availed@ itself of the privileges and benefits of conducting business in a
foreign jurisdiction has sufficient contacts with the forum to confer personal
jurisdiction on a court in that forum.  Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 474B76, 105 S. Ct. 2174, 2183 (1985); BMC Software, 83 S.W.3d at
795.  Although not determinative,
foreseeability is an important consideration in deciding whether the
nonresident defendant has purposefully established minimum contacts with the
forum state.  BMC Software, 83
S.W.3d at 795; Reata, 111 S.W.3d at 646. 
Minimum contacts analysis focuses solely on the actions and reasonable
expectations of the defendant.  Michiana
Easy Livin= Country,
Inc. v. Holten, 168 S.W.3d 777, 790 (Tex.
2005).








Because of the unique and
onerous burden placed on a party called upon to defend a suit in a foreign
legal system, the minimum contacts analysis is particularly important when the
defendant is from a different country.  Asahi
Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114, 107 S. Ct. 1026,
1033 (1987); BMC Software, 83 S.W.3d at 795.  A defendant should not be subject to a
foreign court=s
jurisdiction based on random, fortuitous, or attenuated contacts.  Burger King, 471 U.S. at 475, 105 S.
Ct. at 2183; BMC Software, 83 S.W.3d at 795.  Rather, individuals must have fair warning
that a particular activity may subject them to the jurisdiction of a foreign
sovereign.  Burger King, 471 U.S.
at 472, 105 S. Ct. at 2181; Guardian Royal Exchange Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991); Reata,
111 S.W.3d at 646.

Three factors are important
in determining whether a defendant has purposefully availed itself of the
forum:  first, only the defendant=s contacts with the forum count; second,
the acts relied on must be purposeful rather than merely fortuitous; and,
third, the defendant must seek some benefit, advantage, or profit by availing
itself of the forum.  Michiana,
168 S.W.3d at 785; Karstetter v. Voss, 184 S.W.3d 396, 403 (Tex. App.CDallas 2006, no pet.).

General
v. Specific Jurisdiction








Personal
jurisdiction exists if the nonresident defendant=s minimum contacts give rise to either specific jurisdiction or
general jurisdiction.  Helicopteros
Nacionales de Colombia, 466 U.S. at 413‑14, 104 S. Ct. at 1872; BMC
Software, 83 S.W.3d at 795; Reata, 111 S.W.3d at 646.  A trial court has general jurisdiction over a
nonresident defendant when that defendant=s contacts in a forum are continuous and systematic so that the forum
may exercise personal jurisdiction over the defendant even if the cause of
action did not arise from or relate to activities conducted within the forum
state. BMC Software, 83 S.W.3d at 796; Reata, 111 S.W.3d at
646.  In contrast, specific jurisdiction
is present if the nonresident defendant=s alleged liability arises from or is related to an activity conducted
within the forum.  BMC Software,
83 S.W.3d at 796; Reata, 111 S.W.3d at 646.  When a plaintiff asserts that a trial court
has specific jurisdiction over a nonresident defendant, the minimum contacts
analysis focuses on the relationship among the defendant, the forum, and the
litigation.  Guardian Royal, 815
S.W.2d at 227‑28; Reata, 111 S.W.3d at 646.

For a Texas trial court to
have specific jurisdiction over a nonresident defendant, it is not necessary
that the nonresident defendant=s conduct actually occur in Texas, as long as the defendant=s acts were purposefully directed towards Texas.  Calder v. Jones, 465 U.S. 783, 789B90, 104 S. Ct. 1482, 1487 (1984); CSR Ltd., 925 S.W.2d at 595; Reata,
111 S.W.3d at 646.  A[A] defendant should reasonably anticipate being haled into court
where the effects of its conduct have been intentionally caused through the
purposeful direction of activity toward the forum state, even if the defendant
never physically enters the state.@  Reata, 111 S.W.3d at
646 (quoting Cole v. The Tobacco Inst., 47 F. Supp. 2d 812, 815 (E.D.
Tex. 1999)).

 








 

 

Applicable Facts

Allegations in American=s Pleadings

In its second amended
petition, in which TravelJungle was first added as a defendant in the suit,[4]
American asserted that the trial court had personal jurisdiction over
TravelJungle because it is a foreign corporation that had committed torts in
Texas, breached a contract (AA.com=s Use Agreement) entered into and governed by the laws of Texas,
violated Texas statutory law, and Asystematically did, and still do[es] conduct business in@ Texas. 








American contends that TravelJungle
Auses screen-scraping software on its Traveljungle.com,
Traveljungle.us, and Hotfares.com websites, as well as other affiliated sites@ and that ATraveljungle=s access and use of AA.com is without American=s authorization and in violation of the Use Agreement@ for AA.com.  According to
American, TravelJungle=s
screen-scraping software Asends out
electronic robots, spiders, or other automated scraping devices across the
Internet to enter and search targeted airline industry websites, including but
not limited to AA.com, and extracts proprietary fares from the sites.@  American=s Use AgreementCwhich is
accessed via a link at the bottom of the home page entitled ALegal,@ but which
users are not specifically required to indicate agreement with before using
AA.comCprohibits the use of any Arobot, spider, or other automatic device, without first obtaining
American[>s] . . .
prior written consent.@  American claims in its petition that A[t]his unauthorized use of and intermeddling with AA.com [by sending
electronic robots and spiders to AA.com=s servers] uses valuable computer capacity@ and Adeprive[s]
American of its ability to possess and use that capacity to serve legitimate
customers.@  Thus, American is primarily asserting that
Texas has specific jurisdiction over TravelJungle, and it has at least pled a
sufficient jurisdictional basis that requires TravelJungle to negate all
possible bases of jurisdiction.  See
BMC Software, 83 S.W.3d at 793.

Evidence Offered by TravelJungle in
Support of Special Appearance








In support of its special
appearance, TravelJungle attached an affidavit from Kalina Krasteva, who is Aresponsible for management of the operations of TravelJungle, Ltd.@  In her affidavit, Krasteva
averred that ATravelJungle
is the trade name of an internet-based aggregator of travel data providing
information on airline flights, automobile rentals and hotel accommodations@ and that ATravelJungle
was organized and registered as a limited liability corporation in the United
Kingdom in 2003.@  According to Krasteva, ATravelJungle acquires its data through its automated computer process
that accesses web sites of airlines and reservation sites such as Expedia and
Travelocity in response to inquiries from TravelJungle users.@  Krasteva further averred that A[s]ince its inception in 2001, TravelJungle established one
reservation for a Texas resident that was booked directly through the American
. . . site and eight reservations for Texas residents that were booked through
other sites for air transportation with AA.@ 








Krasteva claimed that before
TravelJungle received American=s second amended petition in 2004, it Awas unaware that AA disapproved of TravelJungle=s use of AA=s website or
logo.@  She further averred that A[s]ince TravelJungle ceased accessing the AA.com web site, any
information relating to AA flights that appears on TravelJungle search reports
is obtained through third-party reservation systems such as Expedia or other
data readily available in the public domain.@  And, finally, she averred that
American Ahas demanded
that TravelJungle not access any information regarding AA regardless of where
such information may reside in the public domain and has stated it requires
that TravelJungle stop distributing any information regarding American fares.@ 








American filed a response, to
which it attached an affidavit from Daniel Henry, the then-current AManaging Director, Customer Technology/Technical Services@ for American.[5]  Henry averred that AA.com=s servers are located in Plano, Texas. 
He also averred that A[s]creen-scraping of AA.com uses valuable computer capacity.  To the extent that scrapers use AA.com=s capacity, they deprive American of its ability to possess and use
that capacity to serve other customers.@  Henry also averred that
Exhibit 7 attached to the response is an exhibit of a computer report showing
that AA.com received 2,972 fare search requests from IP address 207.36.213.160
on June 14, 2004.  Preceding that report
is a copy of a deposition of Bryce Short, who is ADirector of Customer Retention and Quality@ for Affinity Internet, Inc.  He
is the custodian of records able to identify the customer or customers of
Affinity Internet that on June 14, 2004 were the end users of or otherwise
connected with the IP address A207.36.213.160.@  Short identified that end user as being set
forth on attachment 1 to the deposition. 
That attachment shows that the domain A207.36.213.160@ was
registered to TravelJungle Limited, attention Kallina Krasteva.[6]









The trial court also heard
evidence at a hearing on April 13, 2006. 
Dr. Hans-Josef Vogel, a minority shareholder of TravelJungle, testified
that TravelJungle employs a Ametasearch travel engine.@  He testified that TravelJungle
does not Ascrape@ websites; he defined scraping as taking a picture of another website,
scraping pixels off the screen, and reconstituting  them on another PC=s screen.  When asked what
method TravelJungle employed for accessing flight schedule and fare data, Dr.
Vogel answered that Aat the
request of a consumer, [TravelJungle] seek[s] information from another site but
[does] not scrape the other site.@  He also continued,
ambiguously, AYou could
also call that robots - - robots or spiders. 
Essentially, it=s the same
thing.@  It is unclear here whether he
meant that robots and spiders are the same as scraping or whether robots and
spiders are the same thing as what TravelJungle=s software does. 

Vogel later admitted that
someone had to purposefully put AA.com into a search script when TravelJungle
first started accessing AA.com and that he verified that TravelJungle had
stopped accessing AA.com by making sure that it would not be put in the search
script anymore.  He also admitted that
when TravelJungle accesses AA.com, Athere might be a contact with the servers of American Airlines through
that automated software program.@  He also distinguished
TravelJungle from Google.com on the ground that TravelJungle never sent
software to a server to simply collect fare data at random times; a logical
inference from Vogel=s testimony is
that TravelJungle did send software to AA.com=s servers, but in connection with a specific inquiry, not a random
one.








Vogel testified that he did
not know where AA.com=s servers
were located and that their location is not disclosed on AA.com.  He said that TravelJungle has no bank
accounts or offices in Texas and did no business in Texas other than what he
had previously described regarding the websites.   Vogel also testified that TravelJungle does
not charge a user for obtaining information on its website unless the user
actually books a flight, then it charges the user a booking fee.  In Krasteva=s affidavit, she averred that TravelJungle had not retained any part
of an American fare that it had processed and that Aall fare revenues processed by TravelJungle were paid in full either
to reservation sites or to [American] itself.@ 

Vogel testified without
challenge that TravelJungle had never intentionally misrepresented information
that it received from AA.com but that he could not rule out database error;
according to Vogel, TravelJungle displayed only a copy of what its software
actually found.  He also testified
without challenge that American had never blocked TravelJungle=s access to AA.com, nor had it ever tried to Amask@ AA.com from
TravelJungle=s software. 

Analysis








According to
American, its Aclaims in
this suit are based upon TravelJungle=s repeated accessing of AA.com and selling of American fare data.@  American contends that
TravelJungle failed to negate facts showing that it purposefully directed its
activities towards Texas, i.e., facts establishing specific jurisdiction.  Allegations that a tort was committed in
Texas satisfy the long-arm statute, but not due process concerns.  Michiana, 168 S.W.3d at 788.  Thus, our analysis will focus on whether
TravelJungle met its burden to negate American=s allegations that its activities satisfy the minimum contacts
requirement of due process.

TravelJungle contends that it
was just an occasional viewer of AA.com and that it merely Alooked at@ AA.com,
likening its actions to that of a person visiting several websites, reading
fare and scheduling data from the websites, and compiling his or her own
list.  However, TravelJungle=s own witness admitted that TravelJungle=s contacts went beyond merely looking at AA.com when he testified that
someone at TravelJungle had to intentionally include AA.com in its software
search script and that its software is different from Google.com because
TravelJungle does not send its software out to search AA.com at random.  It is undisputed that TravelJungle
specifically entered AA.com into its search script and utilized AA.com in its
searches if AA.com provided service to the user-requested arrival and departure
cities from February 2003 to June 2004. 
Vogel admitted that there might be contact between TravelJungle=s servers and AA.com=s servers in Texas when TravelJungle sent its automated software to
obtain fare and scheduling data from AA.com.








In addition, TravelJungle=s evidence of how it obtained the fare and scheduling data was
unclear; although it contends that its software merely Alooked at@ AA.com,
Vogel=s testimony did not explain how the software merely looked at
AA.com.  He also specifically analogized
to Google.com=s software,
implying that TravelJungle intentionally sent software to AA.com=s servers.  Moreover, American
presented evidence that a website address registered to TravelJungle accessed
AA.com 2,972 times in one day, that TravelJungle=s use of software to search AA.com Auses valuable computer capacity,@ and that TravelJungle=s use of AA.com=s server
capacity deprives American of the ability to use that same capacity to serve
its other customers.  We conclude and
hold that TravelJungle did not meet its burden of negating the evidence showing
that it purposefully directed its data-gathering activity toward AA.com=s servers, which are located in Texas, for commercial, profit-driven
purposes; thus, the basis for jurisdiction specifically arises out of the
conduct of which American complains.  See
Guardian Royal, 815 S.W.2d at 227‑28. 









TravelJungle contends that
its activities could not subject it to specific jurisdiction in Texas because
it did not know where AA.com=s servers were located, it was not aware that American objected to or
disapproved of its data-gathering activities, and it ceased searching AA.com
after American sued it.  But TravelJungle
does not explain why its cessation of such activities should not subject it to
personal jurisdiction in a suit specifically complaining of those past
activities.  Furthermore, it has not
cited any authority, nor have we found any, requiring a potential plaintiff to
inform a potential defendant of its objections to the potential defendant=s purposeful activity towards a forum for purposes of establishing
personal jurisdiction.








As to TravelJungle=s contention that it did not know where AA.com=s servers were located, we do not believe that it should be able to
avoid personal jurisdiction by purposefully engaging in activity directed
towards a server located in a particular forum and then claiming ignorance of
the location of that forum.  In this
respect, this case is similar to federal cases holding that senders of spam
e-mails are subject to personal jurisdiction in the forum in which their
e-mails are received or where the server processing those e-mails is located.
Generally, these cases hold that by purposefully targeting e-mail addresses
using a particular server, the senders assumed the risk that they would be
haled into a forum where that server is located.  See, e.g., Verizon Online Svcs., Inc. v.
Ralsky, 203 F. Supp. 2d 601, 618 (E.D. Va. 2002) (ADefendants assumed the risk of injuring valuable property in Virginia
by deliberately sending millions of UBE [spam e-mails] to and through Verizon=s e-mail servers located in Virginia for pecuniary gain.@).  These cases focus, not on
the defendants= actual
knowledge of the destination of their e-mail activity, but on the deliberate
nature of the defendants=
activity.  See id. at 620 (ADefendants= conduct and
connections to Virginia were of their own choosing . . . .  They cannot seek to escape answering for these
actions by simply pleading ignorance as to where these servers were physically
located.@); Internet Doorway, Inc. v . Parks, 138 F. Supp. 2d 773, 779
(S.D. Miss. 2001) (A[Defendant]
then sent the e-mail to persons presumably all over the country and the
world.  By doing this, [defendant] had to
have been aware that the e-mail would be received and opened in numerous fora,
including Mississippi.@).

TravelJungle contends that
the spam e-mail analogy is inapposite because it does not send spam and because
it searched AA.com only at a user=s request.  However, the
evidence regarding TravelJungle=s purposeful contact of AA.com=s servers is very similar to the e-mail contact initiated in the cases
cited above in that it is TravelJungle=s activity directed toward AA.com that is important, rather than
TravelJungle=s actual
awareness of the physical location of AA.com=s servers.  By deliberately
directing its activity toward AA.com, TravelJungle should have been aware of
the possibility that it would be haled into any forum where AA.com=s servers were located.  See
Reata, 111 S.W.3d at 646; see also Verizon Online Svcs., 203
F. Supp. 2d at 620; Internet Doorway, 138 F. Supp. 2d at 779.








Accordingly, we hold, on the
facts of this case, that TravelJungle did not meet its burden under the
appropriate standard of review to negate all bases of jurisdiction.  More specifically, American=s allegations of specific jurisdiction arising out of TravelJungle=s conduct of which American complains have not been negated.  Because of this determination, we need not address
American=s other alleged bases for jurisdiction or TravelJungle=s responses thereto.  We
overrule TravelJungle=s sole issue
on appeal.

Conclusion

Having overruled TravelJungle=s sole issue, we affirm the trial court=s order denying TravelJungle=s special appearance and remand this case to the trial court for
further proceedings.  We also lift the
stay of all proceedings with respect to American=s claims against TravelJungle that we previously granted on June 27,
2006, effective as of the date mandate issues in this appeal.

 

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL M:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

DELIVERED:
December 14, 2006











[1]In
connection with this allegation, American alleged that TravelJungle=s
software did not always pick up all available fares, including the lowest
fares, and that if TravelJungle users had known that, they might have purchased
their fares at AA.com at a lower fare.





[2]Tex. Penal Code Ann. '
33.02 (Vernon 2003).  This statute
provides that A[a]
person commits an offense if the person knowingly accesses a computer, computer
network, or computer system without the effective consent of the owner.@  Id. '
33.02(a).





[3]Tex. Bus. & Com. Code Ann. '
16.29 (Vernon 2002).  This statute
provides that 

[a]
person may bring an action to enjoin an act likely to injure a business
reputation or to dilute the distinctive quality of a mark registered under this
chapter or Title 15, U.S.C., or a mark or trade name valid at common law,
regardless of whether there is competition between the parties or confusion as
to the source of goods or services. 

Id.





[4]The
same allegations are in American=s fourth amended petition,
which was the live petition at the time of the evidentiary hearing and trial
court=s
ruling on the special appearance.  The
record also contains a fifth amended petition; however, TravelJungle concedes
that because the fourth amended petition was the petition on file when the
trial court ruled on the special appearance, it Ais
presumed to be the version at issue in this appeal.@ 





[5]Henry
averred that in his position, he had Aresponsibility for the
Architecture, Application Development, Operations, and Infrastructure for all
customer-facing applications, which includes AA.com.@ 





[6]TravelJungle
contends that the evidence shows the address was registered to Cybergate, Inc.
rather than TravelJungle.  Although one
of the questions to Short indicates that the address appears to be registered
to Cybergate, Inc., in response to a subsequent question asking the names of
the persons or entities that were the end users of the address, Short answered
that A[t]he
customer records of Affinity Internet, Inc., set forth as attachment one,
detail the record owner of the account using said IP address as of June 14,
2004.@  That attachment does not list Cybergate as
the registrant of the address; rather, it shows TravelJungle Limited as the
name of the customer.